THE GERMAN ALLIANCE INSURANCE COMPANY *et al.*

*v.*

JAMES R. B. VANCLEAVE *et al.*

*Opinion filed June 19, 1901—Rehearing denied October 10, 1901.*

1. ACTIONS AND DEFENSES—*when rule that State cannot be made defendant to suit does not apply.* The fact that money collected by the insurance superintendent as taxes eventually becomes the property of the State does not preclude a suit against him to compel him to refund such taxes, which were paid under protest, and to enjoin him from paying the same to the State Treasurer and the latter from receiving them.

2. EQUITY—*equity may take jurisdiction to avoid a multiplicity of suits.* Equity has jurisdiction of a suit to compel the insurance superintendent to refund taxes claimed to have been collected without authority of law, even though each of the complainants has an adequate remedy at law, where the complainants are numerous, their rights depend upon the same facts, and complete relief may be had by a decree determining a single question applicable to all.

3. INSURANCE—*tax on gross amount of premiums received does not apply to returned premiums.* The two per cent tax imposed by the act of 1899 (Laws of 1899, p. 265,) upon the "gross amount of premiums received" for business done in this State by foreign insurance companies other than life, does not apply to unearned premiums actually refunded upon canceled policies.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

PADDOCK & BILLINGS, and BATES & HARDING, for appellants.

E. S. SMITH, (PERRY A. HULL, of counsel,) for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellants, forty-two corporations organized under the laws of other States and countries, doing fire insurance business in this State, filed their bill in this case in the circuit court of Sangamon county against appellees, the insurance superintendent and treasurer of this State, to compel said insurance superintendent to refund a tax of two per cent paid by complainants, under protest, upon unearned and returned premiums for the year 1900, and to enjoin him from paying over to the State Treasurer the tax so collected and from collecting the same in the future, and to enjoin the State Treasurer from receiving said tax. A temporary injunction was granted, which was dissolved upon a motion, treated as a demurrer, for want of equity upon the face of the bill. Complainants elected to abide by their bill, and the court dismissed it at their costs.

The matter in controversy is the proper construction of the act approved April 19, 1899, entitled "An act providing for a tax on gross premium receipts of insurance companies and associations other than life." (Hurd's Stat. 1899, p. 1042.) That act provides that every insurance company of the class to which complainants belong "shall at the time of making the annual statements as required by law, pay to the insurance superintendent as taxes, two per cent of the gross amount of premiums received by it for business done in this State, including all insurance upon property situated in this State, during the preceding calendar year," and payment of said taxes is made a condition precedent to doing business in this

State.   There is a proviso for a deduction of so much of the tax as shall be paid to cities and villages having an organized fire department, but the proviso neither increases nor diminishes the tax and does not affect the question involved: The annual statement referred to is a statement required by law of the condition of the company on the last day of the preceding calendar year, showing its capital stock, assets and liabilities, as well as income and expenditures of the preceding year.

The facts alleged in the bill and admitted for the purpose of the motion are as follows: The complainants severally made their annual statements for the year 1899 to the insurance superintendent on or about February 1, 1900, and stated therein the gross amount of premiums received for business done in this State during the year 1899, according to their understanding of the law.   In stating such amount they omitted the premiums returned by them to parties insured, upon cancellation of insurance policies, in compliance with the terms of such policies. · They paid over to the insurance superintendent as taxes two per cent of the amounts so reported and received their annual certificates of authority to transact business in this State.   Each policy of insurance which was canceled and the unearned premium returned, provided, when issued, that it might be canceled at any time, at the request of the insured or the option of the insurer, on five days' notice, and the policy should become void and the risk ended on the day of cancellation and the unearned premium be returned.   This was the usual course of business of all fire insurance companies in the State.   The amount returned was fixed by the policy and was based upon the amount of premium earned up to the time of cancellation.   The money returned was the unearned premium for the period after the policy was canceled and ceased to be in force.   The insurance superintendent made demands on complainants to pay a tax of two per cent of said unearned premiums which had been

returned upon the cancellation of policies, and threatened to enforce the penalties provided by the statute and to revoke the authority of the companies to do business in the State unless his demands were complied with. The complainants then paid, under protest, the several amounts so demanded, which are severally stated in the bill, and amount in the aggregate to $15,984.87.

Under the constitution the State can never be made a defendant in any court of law or equity, and it is argued in support of the decree that the bill cannot be maintained because the insurance superintendent is an officer of the State, and therefore the suit is against the State. It is not denied that the State may specify any terms or conditions it pleases on which corporations of other States and foreign countries shall be permitted to transact business in this State. The legislature have fixed one of the conditions in this statute, and the only question involved in the suit is, what is the proper construction of the act? The State is not a defendant by name, and the suit does not relate to property owned by the State or which has ever reached its treasury. There is no attempt to recover money from the State, and the question involved is whether the State has authorized, by law, the insurance superintendent to exact the tax. A suit against him is not different, in any respect, from a suit against any other collector of taxes, and a party is not precluded from questioning the unauthorized act of a tax collector or other officer merely because the money collected will eventually reach the State.

It is next insisted that the decree is right because each of the complainants has an adequate remedy at law, by a suit against the insurance superintendent to recover the amount wrongfully collected from it. At least forty-two suits would be necessary to accomplish the purpose and to give to each complainant its legal remedy, and the question involved in each case would be exactly the same. While the demand is separate in each case, the

rights of the parties depend upon the same facts.    Complete relief may be furnished by a decree determining the single question applicable to all and in which all are interested.    The case is a proper one for an application of equitable powers.

In the construction of the act effect is to be given to the intention of the legislature, and that intention appears to be to levy a tax on the gross income of foreign fire insurance companies.    The object is to require such companies to pay, at designated times, a tax of two per cent on the gross receipts of their business for the previous calendar year.    There is no dispute as to the meaning of the word "gross," and it is conceded that it means the whole or entire amount of premiums received for business done in this State during the year.    The word "gross" is opposed to "net," and its ordinary meaning is the entire amount of the receipts of a business, while the net receipts are those remaining after deductions for the expenses and charges of conducting the business.    It is claimed on one side that the legislature meant by the gross amount of premiums the entire premiums received for furnishing insurance indemnity during the year, while on the other side it is insisted that they meant to include all the money which comes to an insurance company, although paid under an agreement for refunding upon the cancellation of the policy, and although the policy is canceled and the insurance ceases and the money is refunded. If it is true that a part of a premium unearned and returned to the insured is premium for business done, it is equally true that if a whole premium were returned and there was in fact no insurance the money would be premium for business done.    According to the argument which would include premiums returned on canceled policies, if an insurance company should issue a policy and receive a premium and at once cancel the policy and return the premium it would have done the amount of business represented by the policy and the amount received

would be a premium for insurance business done. We do not think the language used will bear that construction. The merchant would not think of including in the gross receipts of his business any sales of goods with the privilege of return on the part of the purchaser, where they are in fact returned. In such a case there is in the end no sale and no business done, in any proper sense. So in the case of an insurance policy for a definite period with an agreement that it may run any portion of that period and then cease; if the policy is canceled and the insurance ceases there is no insurance business for the remaining portion of the period. The premiums returned are not paid as a liability of the insurance company or as a charge or expense of conducting the business, but because one party or the other avails of the option and terminates the insurance. An insurance company would not be authorized to omit from its statement any part of premiums received merely on the ground that policies might be canceled in the future; but where they have been in fact canceled and the money returned, the entire or gross premium receipts cannot, by any fair interpretation, include the moneys so returned. The two per cent collected by the insurance superintendent and paid under protest is upon moneys which did not inure to the benefit of the insurance companies in any manner, and which are not premiums for furnishing fire insurance or indemnity to holders of policies. The apparent purpose of the act is to levy a tax on gross income, and not upon money which is in no sense revenue to the insurance companies.

We think the circuit court was wrong in sustaining the motion and dismissing the bill, and the decree is reversed and the cause remanded.

*Reversed and remanded.*