THE NORTH AMERICAN INSURANCE COMPANY *et al.*

*v.*

HENRY YATES.

*Opinion filed February 21, 1905.*

1. INSURANCE—*business of insurance is subject to police regulation.* The business of insurance is a public necessity, which deals on its own credit for a cash consideration from the assured, is stamped with a public interest, and must obey the proper and necessary regulations by the State in the exercise of its police power.

2. SAME—*companies complying with law are entitled to protection against those not complying.* Insurance companies which have complied with the laws of this State regulating the business of insurance are citizens of this State in the sense that they are entitled to the protection of those laws as against insurance companies not complying with them.

3. SAME—*right of the superintendent of insurance to maintain suits.* Under the act of 1893, creating the department of insurance, any suit which might have been prosecuted by the Auditor of Public Accounts or the Attorney General, with reference to violations of the insurance laws, before the act was passed may be prosecuted by the superintendent of insurance.

4. SAME—*foreign insurance corporations are subject to same liabilities as domestic ones.* Under section 26 of the act relating to corporations, foreign corporations are subject to all the liabilities,

restrictions and duties which are or may be imposed by law upon corporations of like character organized in this State.

5. SAME—*equity may enjoin foreign insurance company from continuing its business.* Under the statute, the superintendent of insurance may maintain a bill in equity to enjoin the further prosecution of the business of a foreign insurance corporation which has failed to comply with the laws regulating the business of insurance.

6. SAME—*when foreign insurance companies are subject to our laws.* Foreign corporations engaged in the business of fire insurance and maintaining an office in this State where the business is carried on through its agents, doing everything in the way of fire insurance except to insure property situated in Illinois, are subject to the laws of this State regulating the business, there being no showing that they do not solicit insurance from citizens of this State owning property in other States.

7. PLEADING—*when allegation is broad enough to include charge of soliciting insurance from citizens of this State.* An allegation that a foreign insurance company has an office in this State where it transacts all the business of fire insurance except that it does not solicit insurance on property situated in this State, is broad enough to include the charge that it solicits insurance from citizens of this State upon property owned by them in other States, since the court will take judicial notice that citizens of this State own property in other States.

8. SAME—*when bill for injunction need not show a violation of civil rights.* A bill by the proper public officer to enjoin the further prosecution of business by a foreign insurance corporation which is alleged to be violating the laws of the State need not show an injury to civil or property rights, since injury to the public will be presumed from the violation of the laws.

9. SAME—*when a bill is not multifarious.* Upon the ground of avoiding a multiplicity of suits a bill may be sustained although there may be several causes of action, if the causes of action grow out of the same transaction, all of the defendants are interested in the same rights and the relief against each is of the same nature.

10. SAME—*bill charging conspiracy not multifarious because it includes all conspirators.* A bill charging conspiracy and combination between certain fire insurance corporations and certain individuals to transact the business of fire insurance in Illinois without complying with the laws is not multifarious because it makes all the conspirators defendants and relates to all acts in the general scheme.

11. TRIAL BY JURY—*constitutional guaranty does not extend to cases in equity.* The constitutional guaranty of the right of trial by jury does not extend to cases which a court of equity has jurisdiction to entertain.

214—18

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

HOBART P. YOUNG, (ALDEN, LATHAM & YOUNG, of counsel,) for appellants.

FRED H. ROWE, (SAMUEL A. HARPER, of counsel,) for appellee.

Mr. CHIEF JUSTICE RICKS delivered the opinion of the court:

Appellee, Henry Yates, as insurance superintendent for the State, filed a bill to enjoin twenty foreign fire insurance companies, and thirty-three individuals who were acting as agents for such companies, from transacting any business of fire insurance in this State without first complying with the laws of the State relative to fire insurance.

The principal allegations of the amended bill are, that each of the defendant corporations is engaged in the business of fire insurance and maintains an office for the transacting of such business in the city of Chicago; that no one of the said corporations has complied with the insurance laws of the State, and particularly the act of March 11, 1869, and the amendments thereto, and the act of July 1, 1879, or with either or any of such acts, and no one of them has been licensed to do business in this State; that each of the said corporations at its office in Chicago, through its said agents, does everything in the way of fire insurance other than to insure property situated in this State; that this manner of doing business is a trick and device to evade the insurance laws of this State and all other States, and is illegal; that each of said corporations is unlawfully exercising a franchise in this State and is exercising powers not conferred upon it by law; that each of the individual defendants has been and is now engaged in carrying on the business of fire insurance

through such corporations in the manner described, and that the defendants have conspired and are conspiring to carry on the fire insurance business as herein set forth, without license and without complying with the insurance laws of this State. To this bill special demurrers were filed by the appellants and other defendants, which were overruled, and appellants electing to stand by their several demurrers, the court entered the decree enjoining them, and each of them, as prayed. As to the other defendants than the appellants, the court stayed its final order to abide the result of this appeal. From the decree the appeal was prosecuted to the Appellate Court for the First District, where the decree of the circuit court of Cook county was affirmed, and this appeal is prosecuted.

. Appellants challenge the sufficiency of the bill in this cause mainly upon grounds going to the jurisdiction of the court of equity. It is said that equity has no jurisdiction to restrain the violation of a penal statute or the commission of a penal offense unconnected with injury to civil rights or property rights, and that the proceeding here is to restrain the alleged violation of a penal statute, does not affect civil or property rights, that there is an adequate remedy at law, that the bill is multifarious, and that the acts complained of are not violations of the laws of this State.

We may be better able to arrive at a satisfactory conclusion by briefly considering the nature of the business involved and the interests relating to it, and under which the appellee claims the right to present the information here in question.

The business of insurance is the outgrowth of time and the demands and necessities of the public. It extends into and covers almost every branch of business and all the relations of life, and is applied to all the hazards of business in life where a basis of risk and compensation can be estimated. In all the stages of life, from the cradle to the grave, it asserts an interest and offers succor and aid. In the business

enterprises, whether by land or sea; in the possessions of men, from a pane of glass to the mansion or the factory; in his undertakings involving every chance, misfortune, moral turpitude or the act of God, it demands admission and promises indemnity, reward or gain. It poses as the faithful and zealous trustee of his earnings and savings, and promises to the widow and orphan a guaranty against misery and want. It intercedes between principal and agent, master and servant, contractor and owner, and insures against loss from almost any and every cause. It is a public necessity that deals in its own credit for a cash consideration from the assured, and is stamped with public interest, and must yield obedience to necessary and proper regulations by the State in the exercise of its police power. (Freund on Police Power, secs. 373, 399, 400, 401, 494; *Commonwealth* v. *Vrooman,* 164 Pa. 321; *John Hancock Mutual Life Ins. Co.* v. *Warren,* 181 U. S. 73; *Fidelity Mutual Life Ass.* v. *Metler,* 185 id. 327.) "Banking and insurance being peculiarly affected with the public interest, it follows that the right to carry on their business may be made to depend upon the compliance with certain conditions." (Freund on Police Power, sec. 401.)

The business is usually conducted by corporations that are creatures of the law, and their rights and immunities are to be found in the law. They have no natural rights. The corporations in question are foreign corporations. In speaking of such corporations and the extent of their rights it is said in *Waters-Pierce Oil Co.* v. *Texas,* 177 U. S. 28: "The plaintiff in error is a foreign corporation, and what right of contracting has it in the State of Texas? This is the only inquiry, and it cannot find an answer in the rights of natural persons. It can only find an answer in the rights of corporations and the power of the State over them. What these rights are and what that power is has often been declared by this court. A corporation is the creature of the law, and none of its powers are original. They are precisely what the incorporating act has made them, and can only be

exercised in the manner which that act authorizes. In other words, the State prescribes the purposes of a corporation and the means of executing those purposes. The purposes and means are within the State's control. This is true as to domestic corporations. It has even a broader application to foreign corporations." This language was quoted and applied in both the above cases of *John Hancock Mutual Life Ins. Co.* v. *Warren,* and *Fidelity Mutual Life Ass.* v. *Metler,* with approval. And this court in *Harding* v. *American Glucose Co.* 182 Ill. 551, said (p. 635) : "It is the settled doctrine in this State, established by many decisions of this court, that foreign corporations do not come into this State as a matter of legal right but only by comity, and that said corporations are subject to the same restrictions and duties as corporations formed in this State, and have no other or greater powers. * * * Foreign corporations cannot be permitted to come into this State for the purpose of asserting rights in contravention of our laws." In that case it was also said (p. 616) : "The public policy of a State is to be found in its statutes, and when they have not directly spoken, then in the decisions of the courts and in the constant practice of government officials. When the legislature speaks upon a subject upon which it has the constitutional power to legislate, public policy is what the statute passed by it indicates."

The public policy of this State touching insurance companies is amply attested by over forty .designated statutes relating to them, and many decisions of its courts of appeal. Eighteen of those acts now in force relate solely to fire insurance,—the branch of that business herein affected,—and several of which are directly applicable to and are for the regulation of the business of appellants and their co-defendants. Regulation of such companies is the chief object of all of such statutes. That this is so is evidenced alike by the title of the acts and their various provisions. It may be that one of the objects, and the main one, of so regulating these

corporations is the protection of the citizens of the State. But this is not the only object. (*People* v. *Pavey,* 151 Ill. 101.) Appellants are foreign corporations. We have hundreds of domestic insurance corporations organized under our law doing business in this and other States, and hundreds of other foreign companies licensed under and complying with the laws of our State and doing business within the State, and the State is concerned in the maintenance of a standard of security and fair dealing, according to the prescribed regulations for all. All those organized under our laws and those licensed and complying with our laws are in a sense citizens of our State, and are entitled to the protection of the law against companies doing business in this State, contrary to its laws, with less than the required capital, and so managed that by manipulation and transfer their obligations are avoided and the business brought into ill-repute.

So great is the importance of the insurance business that there has been created a special branch of the government, designated "Insurance Department of the State of Illinois," charged with the execution of all laws of the State in relation thereto and the companies organized or doing business in the State. The laws governing fire insurance companies organized in this State which we have termed "domestic," require them to have a minimum of cash capital of $100,000 and $200,000 of *bona fide* subscribed risks before beginning business, to invest their money in the manner pointed out by law, and to make annual reports to the State, by which it may be ascertained that they are complying with the regulations. Foreign companies doing like business are required, under penalty, to obtain a license by an application, accompanied by a copy of their charter, which application shall contain a full and detailed history of said company, its organization, officers, capital, assets, investments and liabilities; to maintain a deposit of at least $200,000 in securities with the insurance department; to name an attorney resi-

dent of this State for the service of process in suits against them; to agree that their license shall be revoked if any suit brought against them is removed to the Federal court, and to pay certain fees. They are required to make annual reports, the same as domestic companies, and in the transaction of their business are subject to the same regulations as companies organized under the laws of this State. If the annual statement made by any such company, whether domestic or foreign, shall be false, the insurance department is authorized to revoke the certificate of authority of such corporation, and it can thereafter transact no business until the requirements are complied with. Provision is also made for the examination into the books and affairs of said companies, and if they be found deficient in assets, or violating the laws in other respects, the superintendent of insurance may proceed against them through the courts and have them and their business closed.

By section 4 of the act of 1879, entitled "An act for the better regulation of the business of insurance and for the protection of the citizens of this State, in their dealings with insurance companies," approved June 4, 1879, it is provided: "Any such incorporated company, association or partnership, which shall transact its business in this State in violation of the provisions of this act, shall together with the agent or agents so unlawfully transacting said business jointly and severally be subject to a penalty of five hundred dollars ($500) to be sued for and recovered in the name of the People of the State of Illinois, by the State's attorney of the county in which such agent or agents may reside, and one-half of said penalty, when recovered shall be paid into the treasury of said county, the other half to the informer of such violation: *Provided, however,* that any company, whose license may have been revoked as aforesaid shall thereafter be permitted to transact such business as may be absolutely necessary to wind up its business in this State and none other: *Provided further,* that nothing in this act contained

shall be construed to prevent the filing of an information in the nature of a *quo warranto* against such corporations so violating the provisions of this act." (Hurd's Stat. 1903, chap. 73, par. 34.)

It is charged in the information or bill in this case that the appellant company and its co-defendant companies have not complied with any of the requirements touching foreign companies doing business in this State; that they have no license to do business in this State, and are doing business contrary to the laws of this State and in violation of the section of the statute above quoted. The allegation with reference to the character of business being done by the said companies is, "that each of said corporations above named does in the city of Chicago, in the county of Cook aforesaid, maintain an agency, and that such agency has the agents above named, and others, and that such agents are now and for a long time have been empowered by said company to, and such agents now do and for a long time past have, solicited the business of fire insurance for said company; examined applications for fire insurance for the said company; accepted applications for fire insurance for said company; collected premiums on said insurance for the said company; made contracts of fire insurance for said company; issued policies of fire insurance for said company; adjusted losses for said company; compromised losses for said company; defended suits for said company; paid losses for said company; employed other agents for said company, * * * and performed every other act necessary and proper for the carrying on of the business of fire insurance; but, so far as your orator is informed, your orator states that no one of said companies, at said office in the city of Chicago, aforesaid, issues policies or contracts of insurance on property situated in the State of Illinois or solicits insurance on property situated in the State of Illinois."

Appellants take the position that the various statutes regulating these companies are designed only for the protec-

tion of the citizens of this State, and then, under the above allegation, assert that the business they are doing is not in violation of the statutes, because, it is said, they do not take risks on property located in this State. It is further said that the allegation is not broad enough to include the charge that they do solicit and receive business from citizens in this State. With this construction of the scope of the allegation of the bill we do not agree. It is said in the bill and admitted by the demurrer that these companies do everything that can be and is done by insurance companies except to solicit insurance upon property having its situs in this State. The fact that residents in this State own property in other States is of such common knowledge that the courts must take notice of it, and when that is done, the allegation, or rather the exception found in the allegation, that they do not solicit insurance on property located in this State, does not take from the general allegation the charge that they do solicit insurance from citizens in this State on property possessed by them out of this State.

By the act of 1893, creating the department of insurance, it is provided: "The insurance superintendent shall possess and have all the powers, and he may perform all the duties in regard to the business of insurance in this State, which are now attached by law to the office of Auditor of Public Accounts and the Attorney General." (Hurd's Stat. 1903, chap. 73, par. 3.) It follows, then, that any suit or proceeding that could before, or can now, without that provision be instituted and prosecuted by the Attorney General can be maintained by the superintendent of insurance.

By section 26 of chapter 32 of the Revised Statutes, relating to corporations, "foreign corporations, and the officers and agents thereof doing business in this State, shall be subjected to all the liabilities, restrictions and duties that are or may be imposed upon corporations of like character organized under the general laws of this State."

In applying the statutes governing insurance to foreign corporations we have said: "The purpose of our statute is to produce uniformity in the powers, liabilities, duties and restrictions of foreign and domestic corporations of like character, and to bring them all under the influence of the same law." (*People* v. *VanCleave,* 187 Ill. 125.) And in *Hannibal and St. Joseph Railroad Co.* v. *Crane,* 102 Ill. 249, a foreign corporation questioned the sufficiency of service on its agent. Replying to that contention it is said (p. 255): "Section 26, chapter 32, Revised Statutes of 1874, entitled 'Corporations,' subjects foreign corporations to all of the liabilities, restrictions and duties that are imposed on like corporations of this State. One of the liabilities of corporations organized under the laws of this State is to be sued by service on an officer or agent, and if the liability of foreign bodies is in all respects the same, then they may be sued and served with process in the same manner."

Applying the reasoning there to the case before us, if an injunction would lie against a domestic company for a violation of the insurance statutes, then foreign companies, being subject to the same liabilities, must be subject to the like proceeding. Authority is by statute conferred on the Auditor, (to whose powers the superintendent of insurance succeeds,) to the effect that if he, "upon examination of any insurance company incorporated in this State, is of the opinion that it is insolvent, or that its condition is such as to render its further continuance in business hazardous to the insured therein, or to the public, or that it has failed to comply with the rules, restrictions or conditions provided by law, or has exceeded, or is exceeding its corporate powers, he shall apply by petition to a judge of any circuit court of this State to issue an injunction, restraining such company, in whole or in part, from further proceeding with its business, until a full hearing can be had, or otherwise as he may direct. * * * He [the judge] may in all such cases make such orders and decrees, from time to time, as the exigencies

and equities of the case may require, and in any case, after a full hearing of all the parties interested, may dissolve, modify or perpetuate such injunction, and make all such orders and decrees as may be needful to suspend, restrain or prohibit the further continuance of the business of. the company." (Hurd's Stat. 1903, par. 11, p. 1054.)

Here, as applied to domestic companies, the authority is broad and the power of the court sweeping, and no reason has been, and we think none can be, suggested why the appellants are not subject to the same liabilities, which here means the same remedy.

We do not agree with the contention that before the State, by its proper officer, can maintain a bill such as this, it must show an injury to civil or property rights. The rule invoked applies to the private citizen who seeks by the writ to prevent a public wrong, because he is not the keeper of the public conscience or the conservator of the public rights. (*Christie Street Commission Co.* v. *Board of Trade,* 92 Ill. App. 604; *Cranford* v. *Tyrell,* 128 N. Y. 341; *Sparhawk* v. *Union Pass. Co.* 54 Pa. St. 401; High on Injunctions, sec. 1544.) The rule is well illustrated in the case of public nuisances, which may be prevented or abated at the suit of the Attorney General without showing actual injury to the public, the case of purpresture being a common one, while the private citizen in such a case must show not merely that the act complained of is a public wrong, but also that he suffers special injury to his civil or property rights. (1 High on Injunctions,—3d ed.—sec. 764.) In informations by the Attorney General charging the violation of public laws by corporations affected with a public interest, injury to the public will be presumed from the violations of the law.

We are also of the opinion that the bill could be maintained on the ground of avoiding multiplicity of suits. As it is attacked on the ground that it is multifarious, and the consideration of this proposition would, to a degree, involve the other, we will consider whether it is multifarious.

The general statement of the rule is, if the bill contains several matters of a distinct and independent nature against several defendants it is multifarious, otherwise not. (*Gage v. Parker,* 103 Ill. 528.) To the general rule, it is said, a bill to avoid a multiplicity of suits is an exception. (Story's Eq. Pl.—10th ed.—sec. 285.) While the rule above stated is found in law lexicons and text books, the courts and commentators have almost uniformly held that there is no inflexible rule; that it rests largely in the discretion of the court, and that considerations of convenience to the court, the avoidance of a multiplicity of suits and of unreasonable hardship to the several parties joined are to be taken into account. (*Baird v. Jackson,* 98 Ill. 78; Story's Eq. Pl. sec. 539; *Dunn v. Cooper,* 3 Md. Ch. 46; *Barkis v. Gates,* 89 Fed. Rep. 783; *Andrews v. Pratt,* 44 Cal. 309; *German Alliance Ins. Co. v. VanCleave,* 191 Ill. 410.) Although there may be several causes of action, if they grow out of the same transaction and all the defendants are interested in the same rights, and the relief against each is of the same general character, the bill may be sustained; and where the charge is conspiracy and combination to commit one or many acts, the bill is not multifarious that includes all the conspirators and relates to all the acts within the general scheme. *Brenkerhoff v. Brown,* 6 Johns. Ch. 139; *Kensington v. White,* 3 Price, 164.

Touching the conspiracy and the scheme of the defendants to the bill, it is alleged that the individual defendants are now, and have for a long time been, engaged in transacting the business of fire insurance in the manner described, in the city of Chicago, through the several corporations above named and other corporations to the complainants unknown; that said individual defendants have from time to time incorporated and controlled other corporations in the business of fire insurance, and have from time to time, in order to avoid payment of losses, and for other reasons, changed the fire insurance business controlled by them from

one corporation to another; that each of the defendant corporations and its officers and agents have conspired together in a common scheme to carry on the fire insurance business in the manner described in the bill, and to perpetuate such business in corporate form under the control of and for the advantage of the officers and agents of such corporations and others made parties to the bill, and that the individual defendants and combinations of said individuals control a large number of defendant corporations and other similar corporations, the names of which are unknown to the complainant, and that the corporations controlled by them have conspired together and been parties to a common scheme to carry on said insurance business and to perpetuate the same under the control of and for the advantage of the individual defendants; that in case the defendant corporations, or any of them, should be restrained by the court from carrying on the business, the individuals interested in said corporations would continue the business in the same manner under some other corporate charter or charters, and that the only effective means of preventing the unlawful business or consummation of the scheme is to enjoin both the corporations and the individuals; that there are other corporations not named in the bill, and whose names are unknown, of whom the allegations are true; asks for a discovery as to the other individual conspirators and also for a discovery of the other corporations concerned in the scheme, and that all be made parties to the bill and writ.

The essence of the charge is the common scheme among the individual defendants and others, and the officers in control of the insurance companies, to violate and disregard the insurance laws of the State and to defraud persons obtaining policies from them. The original sin is not more with the insurance companies than the individual defendants, as they can only act by their agents. They are the instruments and means by which the schemes are carried out, and the charge is, that if the companies are enjoined and the individuals not,

the latter will organize or procure other companies to subserve their ends. The relief asked against all is the same, and the acts complained of are all part of the common plan, and we are of the opinion that the bill is not multifarious.

The case of *Kensington* v. *White, supra,* we regard as directly bearing on this feature of the case. That was a bill by seventy-two underwriters to restrain several actions on different policies upon different ships, and for discovery. The bill charged "that the adventure on which the policies had been effected was not *bona fide,* * * * but was contraband and illegal, * * * and that the whole of the insurance was fraudulent and the pretended loss a contrivance for the purpose of charging the plaintiffs with the amount of their subscriptions," and that one of the underwriters, White, was "combining with the other defendants to the bill to effect the illegal object charged," etc. Defendants demurred to the bill for multifariousness. The demurrer was overruled and defendants compelled to file answers, and injunction ordered.

The objection that to entertain the bill deprives appellants of the trial by jury guaranteed by section 9 of article 2 of the constitution of this State we regard as without merit. If the court of chancery may take jurisdiction, then the guaranty does not extend to causes falling within the jurisdiction of equity. The only issue made in the case is one of law, and issues of fact will not arise. *Attorney General* v. *Railroad Co.* 35 Wis. 425.

The circuit court did not err in overruling the demurrers, and the Appellate Court, by its judgment, properly affirmed the decree.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*