Edgar S. Kiefer Tanning Company, Appellee, v. The Alliance Insurance Company of Philadelphia et al., Appellants.

Gen. No. 35,767.

Opinion filed May 16, 1932.  Rehearing denied May 31, 1932.

Hicks & Folonie, for appellants.

Barry & Crowley, for appellee; Rupert Barry, of counsel.

Mr. Presiding Justice O'Connor delivered the opinion of the court.

Complainant filed its bill against seven fire insurance companies to reform policies issued by them covering complainant's property and to enforce the policies as reformed. Afterward it filed its amended bill setting up the same matters as in its original bill but more in detail. The defendants answered. Later the complainant, by leave of court, filed an amendment to its amended bill, to which the defendants' demurrers were overruled, and they then answered. The case was heard by the chancellor and a decree entered in which it was found, *inter alia,* that complainant had failed to prove that the policies should be reformed but that it had proven the material allegations, and it was decreed that the defendants pay the complainant sums aggregating $6,258.80, the amount to be paid by each defendant being specified. To reverse this decree defendants prosecute this appeal.

There is no dispute as to the facts in this case. The only controversy is as to the construction to be placed on the policies in view of all the accompanying circumstances.

The record discloses that complainant was engaged in the manufacture and sale of leather on the third floor of a building known as numbers 223–225 West Lake street, Chicago, and later enlarged its quarters by taking space on the third floor of a building immediately adjoining, known as numbers 219–221 West Lake street. The floors were on the same level and the two spaces were connected by a door. Its merchandise in process of manufacture or finished was shifted over the entire space which was operated as a single business. To insure its property complainant obtained $109,000 of fire insurance. There were 36 policies written by 33 companies and complainant paid the same rate of premium for each of the policies. While the policies were in effect a fire damaged the property located in the space known as 219–221 West Lake street. There was no damage to the property on the other part of the floor known as 223–225 West Lake street. After the fire, by agreement of all parties including the defendants, the loss was adjusted by the Cook County Loss Adjustment Bureau. The adjustment showed the following: Cash value of complainant's property, $120,649.78; cash value of that portion of the property located on that part of the floor known as 219–221 West Lake street where the fire occurred, $37,755.79; damage caused by the fire, $35,655.53. After the adjustment the insurance companies representing 29 policies aggregating $89,000 insurance, paid their pro rata share of the loss, viz., $29,113.24. The seven defendants, who had policies on the property aggregating $20,000 insurance, refused to pay the balance of the loss, $6,542.29, claiming they were not liable for that amount because complainant's property was located

in two buildings and under the terms of the policies the aggregate amount of insurance on the property covered by the seven policies on the building where the loss occurred was $6,258.80, and that by another provision of the policies they were required to pay only a proportionate part of that amount, namely, $2,342.70, which they offered and agreed to pay. The offer being refused, this suit was brought.

There are three paragraphs in the policies upon which the defendants rely to sustain their contention:

(1) "In case this policy covers in more than one building, this policy to attach in each building in proportion as the value in each bears to the value in all. . . .

(2) "Contribution Clause: In consideration of the rate at which this policy is written, it is expressly stipulated and made a condition of this contract that this company shall be liable for no greater proportion of any loss than the amount hereby insured bears to ninety (90) per cent of the actual cash value of the property described herein at the time when such loss shall happen, nor for more than the proportion which this policy bears to the total contributing insurance thereon. . . .

(3) "This company shall not be liable under this policy for a greater proportion of any loss on the described property, or for loss by and expense of removal from the premises endangered by fire, than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property, and the extent of the application of the insurance under this policy or of the contribution to be made by this company in case of loss may be provided for by agreement or condition written hereon or attached or appended hereto."

The first paragraph above quoted from the policy is referred to in the record and briefs as the "Average Clause."

The defendants contend that the decree is wrong and should be reversed because the only ground alleged in the amended bill as amended that would give a court of equity jurisdiction was that the policies be reformed on account of the mutual mistake of both parties in reference to the so-called "Average Clause," and that since the decree expressly found that the complainant had not proven its allegation in reference to the reformation of the policies, this eliminated the only ground which would give equity jurisdiction, and the bill should have been dismissed. In support of this contention the defendants cite a number of authorities, the leading one being *Brauer v. Laughlin,* 235 Ill. 265. In that case it was held that the allegations of the bill which would authorize a court of equity to take jurisdiction to establish a trust and for an accounting were not sustained by the proof, although it showed that complainant had a legal demand against defendants for money loaned, yet this fact would not justify a court of equity in retaining jurisdiction and entering a money decree, no reason appearing why the remedy at law was not complete and adequate. The basis for this holding was that plaintiff had but a legal demand which he could enforce adequately in an action of law, where either party would be entitled to a trial by jury. The court there said (pp. 273, 274) : "The recovery here allowed is upon a purely legal demand, and if an action had been brought at law, either of the parties would have been entitled to a jury on the trial. Courts will not permit parties to sue in chancery, and upon failure to establish any basis for equitable relief have the bill retained for the purpose of a recovery upon a purely legal demand. To allow this to be done would be to deprive the defendant of his constitutional right of trial by jury. We said in *County of Cook v. Davis,* 143 Ill. 151 (p. 154) : 'Where a court of law is competent to afford an adequate and ample remedy, courts of equity

will remit the parties to the courts of law, where the right of trial by jury is secured to them.' '' In that case it will be noted that it was held that a court of equity was without jurisdiction where the proof failed to sustain the allegations of the bill which gave such court jurisdiction on the ground that there was an adequate remedy at law and therefore the parties were entitled to a jury trial. In the instant case it is conceded by counsel for the defendants that even if the complainant had brought separate actions at law on the seven policies, there would be no question for a jury to pass upon because the only question involved would be the construction of the policies, which is a question of law for the court. This being true, it follows that as a matter of substance the defendants were not deprived of a jury trial, which was the basis for the decision in the *Brauer* case. The same judge who heard the chancery case is authorized, under the law, to hear actions at law should they have been brought on the several policies. It is fundamental that courts never require the doing of a useless act, and it would be entirely useless to reverse the decree in this case so that the same judge might pass on the same legal questions in actions at law brought on the policies.

But we are further of the opinion that a court of equity had jurisdiction although complainant's evidence did not sustain the allegations of his bill in regard to the mutual mistake for the reason that it would prevent a multiplicity of suits—the bringing of seven suits—on the seven policies. *Abbott v. Loving,* 303 Ill. 154; *North American Ins. Co. v. Yates,* 214 Ill. 272; Pomeroy's Eq. Jur., sec. 245 (4th Ed.) vol. 1; *Clark v. City of Belvidere,* 254 Ill. App. 86; *German Alliance Ins. Co. v. Van Cleave,* 191 Ill. 410.

In the *Abbott* case, *supra,* a bill was filed and it was demurred to on the ground that it was multifarious. The court said (p. 162): ''It is impossible to lay down

any rule universally applicable and controlling on this question or to say with certainty what constitutes multifariousness as an abstract proposition, under the authorities; that there is no settled and inflexible rule; that the modern tendency of the courts is to relax the rigid rules of pleading and to hold that a bill is not multifarious where causes set forth in the bill may more conveniently be tried in a single suit, where it will avoid a multiplicity of suits, and where the relief sought in each cause is of the same general character and no unreasonable hardship will be caused the parties against whom the relief is asked. . . . 'A bill is not necessarily rendered multifarious by reason of the fact that there may be united in it several causes of action. If all the different causes of action united in the bill grow out of the same transaction, and if all the defendants are interested in the same rights and the relief against each is of the same general character, the bill may be maintained. No bill is multifarious that presents a common point of litigation, the decision of which will affect the whole subject matter and will settle the rights of all the parties to the suit.' ''

In the *Yates* case, *supra* (214 Ill. 272), a bill was filed by the insurance superintendent against 20 foreign fire insurance companies and it was held that the bill was not multifarious but might be maintained on the ground of avoiding a multiplicity of suits; that there was no inflexible rule laid down but that each case rested largely in the discretion of the court; (p. 284): ''and that considerations of convenience to the court, the avoidance of a multiplicity of suits and of unreasonable hardship to the several parties joined are to be taken into account.''

Pomeroy in his work on Equity Jurisprudence (4th ed.) vol. I, p. 396, sec. 245, says: ''4. Where the same party, A, has or claims to have some common right against a number of persons, the establishment of

which would regularly require a separate action brought by him against each of these persons, or brought by each of them against him, and instead thereof he might procure the whole to be determined in one suit brought by himself against all the adverse claimants as co-defendants,'' and that in such a situation equity would take jurisdiction.

In the *Clark* case, *supra* (254 Ill. App. 86), it was held that a bill brought by 10 property owners to compel the City of Belvidere to refund to each complainant a certain sum due as a rebate under a special assessment was maintainable on the ground that it would avoid a multiplicity of suits, although each complainant had an adequate remedy at law. Citing the *Van Cleave* and *Abbott* cases, *supra*.

In the *Van Cleave* case, *supra* (191 Ill. 410), 42 foreign fire insurance companies doing business in this State filed their bill against the insurance superintendent and State treasurer to compel the superintendent to refund a tax of two per cent paid by them under protest. A demurrer was sustained to the bill and it was dismissed, but on appeal to the Supreme Court the decree was reversed and the cause remanded. The bill there showed, *inter alia,* that each complainant paid a certain tax, the aggregate amount paid by the 42 companies being more than $15,000. The court there said (pp. 413, 414): ''It is next insisted that the decree is right because each of the complainants has an adequate remedy at law, by a suit against the insurance superintendent to recover the amount wrongfully collected from it. At least 42 suits would be necessary to accomplish the purpose and to give to each complainant its legal remedy, and the question involved in each case would be exactly the same. While the demand is separate in each case, the rights of the parties depend upon the same facts. Complete relief may be furnished by a decree determining the single question

applicable to all and in which all are interested. The case is a proper one for an application of equitable powers."

We think the rule announced in that case is applicable to the facts in the case before us. In that case, each of the 42 insurance companies might maintain a suit at law against the insurance superintendent. The facts would be the same in each of the 42 cases. The evidence would have to be introduced 42 different times, while all of this could be accomplished by one suit in chancery where the evidence would be produced but once. In the instant case the complainant, to enforce its rights, would be required to bring separate actions at law and the evidence and the questions involved would be identical in each case. It would have to produce the evidence in seven actions, while in a court of equity one suit would determine the entire matter. As said in the *Van Cleave* case, we think the facts in the case before us make it "a proper one for an application of equitable powers."

The defendants further contend that complainant's suit was barred by a limitation contained in the policies which provided that no suit or action on the policies could be brought unless commenced within 12 months next after the fire; that the fire occurred on July 8, 1927, and the bill was filed March 19, 1928, within the year; that the relief prayed in the bill and the amended bill which was later filed was that the policies be reformed; that the amendment to the amended bill was filed May 17, 1930, more than 12 months after the fire, in which the relief sought was that the policies be enforced as written, without reformation, and that the amendment stated a different cause of action from that set up in the bill and the amended bill. We think there is no merit in this contention. The complainant in his original bill, in his amended bill, and in the amendment, was seeking to enforce payment by the seven defend-

ant insurance companies for the loss sustained by him on account of the fire damaging his property. The prayer in the bill and in the amended bill was not changed by the amendment. Complainant's one object was to secure the money he claimed to be due him, and it was not changed in any way by the amendment—the prayer still remained the same.

Coming now to the merits of the controversy, the defendants' position is that the court placed a wrong construction on the insurance policies; that each policy contained the three paragraphs hereinabove quoted; that since the property covered by the policies was located in two buildings, the amount of insurance on the property in the building where the fire occurred, and covered by the seven policies (whose face value aggregated $20,000) was but $6,258.80. In other words, that this last sum was the amount of insurance represented by the policies in question on the property in the building where the fire occurred, and that under the seven policies they were required to pay only the proportionate share of the loss which this $6,258.80 bore to the entire insurance on the property in the building in question, viz., $95,258.80, which sum was $2,342.72.

We think there are two answers to this contention and the first is that complainant's property cannot be said to be located in two separate buildings within the meaning of the policies or within any other meaning. While the case was tried on that theory, and no complaint is made by the complainant in this regard, yet we are of the opinion that we are warranted in holding that the property must be considered as at one location and in either view the amount recoverable from the defendants would be substantially the same. The undisputed evidence shows that complainant occupied a space on the third floor of a building on West Lake street where it conducted its business; that it needed

more space and rented floor space of a building immediately adjoining, the floor being on the same level as that occupied by the complainant, and these two spaces were connected by a door through the wall of the building. The business was conducted as a single business at one place; therefore the first paragraph quoted in the policy, while it might appear on the trial there was no mistake in regard to this paragraph, yet we think it was inapplicable to the facts in the case, because there was but one space where complainant's property was located. Moreover, we think it was the understanding of both parties, as appears from the policies involved, that the property was considered as located at one place. A reference to one of these policies we think will be sufficient. At the top appears in large letters: "HOME FIRE AND MARINE INSURANCE COMPANY. Amount $2500.00. Rate .442 Premium 11.05. In Consideration of the Stipulations herein named of eleven and .05/100 Dollars premium, Does Insure Edgar S. Kiefer Tanning Co. . . . against all direct loss or damage by fire, except as hereinafter provided, to an amount not exceeding Twenty-Five Hundred Dollars to the following described property while located and contained as described herein, and not elsewhere."

All of the foregoing is in large letters. Then is attached a rider, describing the property, which is printed in smaller type, and continues as follows: "all while contained in or attached to the brick" (brick is written by typewriter in a blank space). Then follows printing of small type, which is: "building or buildings, and additions, adjoining and communicating, and on and under sidewalks and areas pertaining to same, . . . known as Nos." Then there is a blank space in which there is typewritten "219–221–223–225 West Lake Street," Chicago. Then follows small printed matter on the same rider, including paragraphs one

and two above quoted, and on the second page of the policy there are about 120 lines of small printed matter, near the bottom of which page appears paragraph three above quoted.

Why an insurance policy should not all be written on one page we are unable to understand. Certainly a policy of that length could be so drawn as to contain all the essential elements required to make a clear and concise contract.

We think it obvious from a physical examination of the policies, and from the attendant circumstances, that complainant thought it was insuring its property for the face of the policies mentioned. And, while it has been said that where one has fire insurance policies in his possession he is presumed to know all of the provisions and conditions they contain, yet we know as a matter of fact this is not true. The policy specifically referred to above would lead complainant to believe it was getting $2,500 insurance on its property. It did not know until after the fire that this was to be whittled down until it almost reached the vanishing point, defendants contending that it was only liable on this policy of $2,500 for $292.84. If this is the effect to be given to this and the other policies involved, we think it a misnomer to refer to them as insurance policies. As Mr. Justice Matchett, in delivering the opinion of this court in the case of *Hancock v. National Council of Knights and Ladies of Security,* 222 Ill. App. 647, in construing the defendant's liability under a "benefit certificate" issued by it, said, "If it was the intention of the company that each answer should be so considered, then it would seem that 'Beneficiary Certificate' was a misnomer for the contract delivered." Here complainant was buying $20,000 worth of insurance covering his property of more than $120,000. He paid the same rate of premium for this as he paid for the other 29 policies. Twenty-seven of

these policies were blanket policies and two of them contained the ''Average Clause'' provision, which provision was disregarded by the two companies in ascertaining the amount they were required to and did pay. In view of the circumstances disclosed by the undisputed facts, the policies ought not to be construed so as to relieve the defendants of a great part claimed to be due under the policies, unless there is a compelling reason. The defendants contend that there is such reason; that the court erred in permitting the witness, Lang, to testify as to the meaning of the policies because this was a question of law for the court. Lang was a fire insurance adjuster and acted for the adjustment bureau in apportioning the losses between the several insurance companies on account of the losses caused by the fire, which the complainant sustained. He testified that after agreeing upon the amount of the loss, the adjuster apportioned the claim among the policies as they were written and by this apportionment the complainant would not receive reimbursement up to the amount of the losses as agreed upon, because of ''non-concurrencies in the insurance policies''; that in the apportionment of such losses there was no established uniform method of non-concurrent insurance. ''I consider that this insurance was non-concurrent insurance, because the policies were not all exactly alike.'' He then testified that in arriving at the liabilities of the several companies they took the face of the policies—$89,000—issued by the 29 companies and $20,000 issued by the seven defendants and treating the property as being located in two buildings, the seven defendants' liability would be $6,258.74, which was the amount fixed by the decree.

A reading of this witness's testimony discloses the fact that it would be of great assistance to the court in arriving at the proper construction of the policy, and therefore we think it was competent.

The policies in suit being construed as nonconcurrent, which we think the court was justified in holding, the decree was right. In a book entitled "The Fire Insurance Contract" published under the auspices of the Insurance Society of New York, Mr. W. N. Bament, one of its contributors, and a general adjuster, said (p. 539): "An apportionment of losses under nonconcurrent policies has commanded the attention of the courts as well as that of the best legal and lay minds in the fire insurance business for nearly a century, and although many rules have been devised for the apportionment of losses where policies are nonconcurrent, no rule of universal or even general application has been found, and the prospect of discovering the philosopher's stone is as remote as ever. All the courts which have passed upon the question have held that the first requisite of any method of apportionment must be the insured's protection to the full extent of his rights under his policies; and any method, which in a given case, fails to afford him this just measure of indemnity, must give place to another that will. This is eminently proper, because other insurance is taken out by the insured for his own benefit and not for the benefit of co-insuring companies. He pays the premium and consequently it is his interest which should be the prime consideration. The benefit accruing to co-insuring companies is and should be regarded as a piece of good fortune and merely incidental."

And in Richards on Insurance, 3rd ed., page 438, the author, in discussing the interpretation of insurance policies, says: "One principle, however, the courts seem to hold in common, to wit: that unless the express phraseology of the policies prohibits, the contribution clause ought not to be so applied as to diminish the protection of the insured; since usually the insurer fixes the amount of his premium regardless of other insurance, and if after the fire he happens to find other insurance which relieves him in part from his liability,

it is a piece of pure good fortune. His principle engagement is to pay the loss in full up to the face of his policy, and the insured has given no promise to take out or keep up other insurance.''

From the foregoing and other authorities, it is clear that in construing insurance policies as to the apportionment of losses, the question involved is still in great doubt; but as stated, the first requisite in the construction of such insurance policy must be the protection of the insured. In the instant case the 29 insurance companies, the face of whose policies aggregated $89,000, have paid their proportionate share of the loss, and unless the seven defendants are also required to do so, the complainant will not be paid the full amount of its loss, namely $35,655.53, although its property was worth more than $120,000. Under the authorities such a construction ought not to be given the policies in suit.

For the reasons stated the decree of the superior court of Cook county is affirmed.

*Affirmed.*

McSURELY and MATCHETT, JJ., concur.