John W. Snyder et al., Appellants, v. Aetna Construction Company et al., Defendants. The Northwestern Terra Cotta Company et al., Appellees.

Gen. No. 36,762.

592

Opinion filed December 11, 1933. Rehearing denied December 27, 1933.

MARSHALL SOLBERG and PAUL B. FISCHER, for appellants; KELLAM FOSTER, of counsel.

CASSELS, POTTER & BENTLEY, for appellees; LESLIE H. VOGEL and WILLIAM R. RODENBERG, of counsel.

MR. JUSTICE MCSURELY delivered the opinion of the court.

Complainants, some of the stockholders of the Aetna Construction Company, filed their bill seeking to recover certain moneys they claimed belonged to them; defendants filed demurrers, which were sustained; leave was given to amend the bill as to certain defendants, but it was dismissed for want of equity as to the defendants The Northwestern Terra Cotta Company, the Chicago Title & Trust Company and H. J. Lucas, receivers of The Northwestern Terra Cotta Company; complainants appeal from this decree.

Complainants seek to recover moneys which they allege were wrongfully paid by The Northwestern Terra Cotta Company to four of the officers of the Aetna Construction Company for the purpose of pro-

curing a sale of the assets of the Aetna Construction Company to The Northwestern Terra Cotta Company.

The bill alleges that in February and March, 1928, and for a long time prior thereto, the business affairs of the Aetna Construction Company were conducted by defendants E. C. Pronger, Herman F. Pronger, Wm. H. Pronger, and Charles A. Phelps, an attorney; that for a long time prior there were few if any directors' meetings, and no statements or reports made to the stockholders; that the directors, except the Prongers and Phelps, had very little information about the affairs of the company; that shortly prior to February, 1928, the Prongers and Phelps negotiated with a view of selling the assets of the Aetna company to the Northwestern company; that prior thereto the business of the Aetna company had been prosperous; that pursuant to the negotiations the Northwestern company bought the business and assets of the Aetna company for $390,000; that the terms of the sale were approved by the stockholders of the Aetna company, the sale was consummated and the purchase price was paid.

The bill charges that in connection with this sale the Prongers and Phelps obtained a large sum of money from the Northwestern company, that this was concealed from the officers and directors of the Aetna company, except the Prongers and Phelps, and did not come to the knowledge of complainants, stockholders in the Aetna company, until a few months before filing this bill; that these secret payments to the Prongers and Phelps amounted to $185,000, $25,000 being paid to each of these men as an ostensible consideration that they would abstain from entering into the terra cotta business for 10 years; that $25,000 was paid to the Prongers for some trucks and trailers, which was highly in excess of their real value; that the remaining $60,000 was paid to Herman F. Pronger

in the form of a salary at the rate of $1,000 a month
for five years; the bill alleges that these sums were
paid by virtue of a collusive understanding between
the Northwestern company and the Prongers and
Phelps; that the real purpose of those payments was
that the Northwestern company might acquire the as-
sets and business of the Aetna company at less than
its actual value, and that the purpose of the Prongers
and Phelps in entering into this secret agreement was
to obtain a private and illicit profit for themselves by
virtue of their ability to deliver assets of the Aetna
company to the Northwestern company for a consid-
eration much less than their value, and to secure the
collusive co-operation of the Prongers and Phelps in
delivering the assets and business of the Aetna com-
pany to the Northwestern company for an inadequate
consideration.

The bill alleges that the Prongers and Phelps took
advantage of their positions as officers and directors
of the Aetna company to deliver its assets to the
Northwestern company for an inadequate considera-
tion and to obtain for themselves, individually, large
sums for which they furnished no adequate consider-
ation and which in reality were secret and illegal
profits obtained by a breach of their obligations to the
Aetna company and its stockholders; that at the date
of the sale the Prongers were financially embarrassed
and that the Northwestern company knew this and
knew that the payments made to the Prongers and
Phelps would equitably belong to the Aetna company
and in equity and good conscience the payments were
for and on account of the Aetna company, which should
be permitted to recover the same and distribute the
amount among the complainants and other stock-
holders.

We hold that the bill makes out a case for equitable
relief against The Northwestern Terra Cotta Com-

pany and its receivers, and they should be required to answer.

The demurrers admit that the Prongers and Phelps. were the Aetna company's agents in making the sale. Under such circumstances all secret profits of the agents inure to the benefit of the principal. The rule is stated in 1 Mechem on Agency (2nd ed.), sec. 1224, pp. 894, 895:

"The well settled and salutary principle that a person who undertakes to act for another shall not, in the same matter, act for himself, results also in the other rule, that all profits made and advantage gained by the agent in the execution of the agency belong to the principal. And it matters not whether such profit or advantage be the result of the performance or of the violation of the duty of the agent, if it be the fruit of the agency."

In *March v. Eastern R. Co.,* 40 N. H. 548, it was held that minority stockholders had a right to maintain a bill against the directors of their own corporation to prevent misapplication of funds and compel the distribution of these funds as dividends among its stockholders. *Brennan v. Barnes,* 232 N. Y. S. 112, sustained the action brought by stockholders to recover certain property which it was claimed the majority of the directors permitted to be transferred without consideration, the opinion saying that the stockholders could enforce their claim "against the guilty directors and against others participating with them in the unlawful transfer of the property of the corporation." In *Brock v. Poor,* 174 N. Y. S. 186, the stockholders brought a suit to compel certain officers and directors to account for certain profits realized by them personally by the fraudulent diversion and sale of the assets of the corporation. An additional party defendant was a corporation which defendants had organized to which to transfer these assets; it was

alleged that the additional defendant had full knowledge of the fact and benefited by the transaction. It .was held that, not only could the complaining stockholders maintain their suit to compel restitution on accounting, but that the corporation to which the assets of the first corporation had been conveyed was a proper party. The frequently cited case of *Public Shoe Stores, Inc. v. Goldstein and Dunsay*, 233 N. Y. S. 73, is in point. There Dunsay was a director and exclusive manager of the plaintiff's business; he represented to his directors that the business was operating at a loss and that it would be of advantage to sell to Goldstein; the directors acted on this recommendation and sold to Goldstein upon the terms suggested by Dunsay; it was shown that Dunsay received $15,000 from Goldstein as a bribe for bringing about the sale of plaintiff's business; this was in addition to the amount paid to plaintiff. It was held that both Dunsay and Goldstein were liable, the court saying that Dunsay was a trustee in respect to this sale, and that, "He could not receive or participate in any compensation beyond that which his fellow directors would receive as consideration, and the person who knowingly participated in and aided him in committing this breach of trust and misapplication of the funds of a trust is equally liable with the trustee." See also *Wood v. MacLean Drug Co.*, 266 Ill. App. 5, and cases there cited.

Defendants argue earnestly that even if a fraudulent conspiracy existed, the bill was fatally defective in failing to allege that the consideration passing from the Northwestern company to the Aetna company was inadequate. The bill contains sufficient allegations to this effect. It asserts that the Prongers and Phelps undertook to deliver the assets of the Aetna company to the Northwestern company "for a consideration much less than the value of such assets." And again,

that the object of the arrangement was that the Northwestern company should acquire the business and assets of the Aetna company "for an inadequate consideration." But the bill would be good without such allegations, for the charge is that the Prongers and Phelps received for themselves money which was part of the purchase price paid by the Northwestern company, and that the stockholders of the Aetna company are entitled to all the money paid for their business.

The bill of complaint is not multifarious. As we have said, it is an attempt to recover part of the moneys paid by the Northwestern company for the business of the Aetna company. To do this involves the ascertainment and collection of the amounts, the ascertainment of the proper parties among whom the moneys should be distributed, and other matters involving an accounting against the Northwestern company and also other defendants. Complainants are seeking to establish a fund from various sources which they allege should be distributed among the stockholders. If the circumstances justify a joinder of demands against different defendants, the fact that different forms of relief may be required does not render a bill multifarious. 21 C. J., pp. 315, 424. It is a well settled principle that the avoidance of a multitude of suits is, in itself, a ground for equitable jurisdiction. *Abbott v. Loving,* 303 Ill. 154; *Miller v. Hale,* 308 Ill. 275; *O'Connor v. Board of Trustees,* 155 Ill. App. 460 (affirmed 247 Ill. 54); *North American Ins. Co. v. Yates,* 214 Ill. 272; *Kiefer Tanning Co. v. Alliance Ins. Co.,* 266 Ill. App. 362. Many other cases might be cited. As is well known, on January 1st next, when the new Civil Practice Act goes into effect, joining of many causes of action in one proceeding will be permitted and approved.

The bill purports to be brought by complainants in their own behalf and on behalf of any other stock-

holders of the Aetna company similarly situated who may desire to join complainants in this proceeding and become parties thereto and share the costs thereof. Defendants asserted, as ground for special demurrer, that the bill showed nonjoinder of necessary parties complainants in that it did not purport to be brought on behalf of all the stockholders of the Aetna company. This form of bringing suit has been approved. The bill is brought on behalf of other stockholders similarly situated. Where persons interested in obtaining relief are very numerous, one or more may sue on behalf of himself or themselves and all others of the same class who may choose to come in and contribute to the costs and expenses of the suit. The rule is so stated, with supporting citations, in 21 C. J., pp. 287 and 292, note. We do not read *Hayden v. Perfection Cooler Co.*, 227 Mass. 589, as holding to the contrary. In that case the bill was filed by two stockholders of a going corporation, alleging unlawful diversion by certain directors of moneys belonging to the corporation. The opinion holds that the bill should contain the allegation that the suit is brought for the benefit of the corporation, and leave was granted to amend the bill accordingly. The decision in that case does not apply to the instant bill.

Defendants, by special demurrer, claimed laches. The bill alleges that for a long time prior to the sale of its assets the Aetna company was dominated by the Prongers and Phelps, who concealed the facts as to the condition of the company from the stockholders; that unsuccessful efforts were made to obtain this information until about June 6, 1930, when an investigation was made which finally resulted in procuring part of the data which was made the basis of the bill. The bill alleges a course of obstructive tactics on the part of defendants, which excuses any delay in filing the bill. Furthermore, there is nothing to show that the

Northwestern company was prejudiced in any way by the delay in filing the bill, and under such circumstances there is no laches. *Schultz v. O'Hearn,* 319 Ill. 244.

For the reasons indicated we hold that the general and special demurrers filed on behalf of the Northwestern Terra Cotta Company and its receivers should have been overruled and these defendants ruled to answer.

The decree of the superior court is reversed and the cause remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

MATCHETT, P. J., and O'CONNOR, J., concur.