## The People of the State of Illinois v. Aachen & Munich Fire Insurance Company of Germany et al.

1. RESTRAINT OF TRADE—*common law against combinations in, in force in Illinois.* The legislative enactments of Illinois do not supersede the common law with respect to combinations in restraint of trade.

2. RESTRAINT OF TRADE—*injunction lies to restrain combinations in.* Injunction lies, at the instance of the attorney-general, to restrain combinations in restraint of trade which tend injuriously to affect the public interest.

3. INSURANCE—*character of business of.* The insurance business is impressed with a public interest.

Information by attorney-general praying for injunction. Error to the Circuit Court of St. Clair County; the Hon. R. D. W. HOLDER, Judge, presiding. Heard in this court at the February term, 1905. Reversed and remanded with directions. Opinion filed September 18, 1905. Rehearing denied February 28, 1906.

H. J. HAMLIN, Attorney-General, for appellant; CHARLES W. THOMAS and GEORGE B. RHOADS, of counsel.

BATES & HARDING, JOSEPH E. PADEN and RUBENS, FISCHER, MOSSER & RIGBY, for appellees.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was an information praying for a writ of injunction, in the Circuit Court of St. Clair County, by Howland J. Hamlin, Attorney-General of the State of Illinois, suing in the name of and in behalf of the people, against Aachen and Munich Fire Insurance Company of Germany, and 109 other fire insurance companies, and M. F. Zent, agent for all said companies. A general demurrer was interposed to the information and was sustained by the court. Plaintiff in error elected to stand by the information, and the court decreed its dismissal.

The more material averments in the amended information to which the demurrer now before us was sustained are in substance as follows: Howland J. Hamlin, Attorney-General of the State of Illinois, suing in the name of and

by the authority of and on behalf of the people of said State and as such Attorney-General, shows to the court here and gives it to know and be informed :

That the following named corporations are, and for more than a year last past have been doing and prosecuting in a certain district or territory composed of the counties of St. Clair, Madison and Clinton in the said State of Illinois, the business of insuring persons and corporations against loss of property by fire, commonly known as the business of fire insurance : (Here follow the names of six domestic and 104 foreign insurance companies.)

That the said companies are, and, for the space of time aforesaid, have been duly authorized under the laws of the State of Illinois to carry on the said business of fire insurance therein, and are, and for the said space of time have been substantially the only persons or companies doing business in the said district or territory, and are and have been able to control and do all of said business transacted in the same.

That the said companies, before the combination and conspiracy hereinafter set forth, did severally fix the rates of fire insurance in the policies of insurance made and issued by them severally, and did severally agree with the insured upon all special provisions or terms contained in the said policies and did compete with each other not only in the matter of rates of fire insurance, but in the matter of special terms of insurance.

That the said companies illegally conspired and combined together and with one M. F. Zent, for the purpose of abolishing and suppressing the said competition between the said companies as the same theretofore existed, and for the purpose of fixing rates of fire insurance which shall be charged and exacted by each of the said companies in the said district or territory, and for the purpose of preventing said companies, through their various agents or otherwise, from competing with each other in the said district or territory in the matter of rates of fire insurance or premiums to be paid for the same, and for the purpose of preventing said

companies through their several and various agents or otherwise from competing with each other in the matter of making special terms or provisions in policies and contracts of fire insurance, did select and appoint the said Zent to be the joint agent of all the said companies, and agreed with him, and with each other, that he, the said Zent, as such joint agent, should have the sole and exclusive authority and power to fix and determine all rates of fire insurance effected by said companies and each of them and the amount of all premiums to be paid for the same, and all special terms and provisions in policies of fire insurance issued by said companies and each of them.

That the said companies and the said Zent, after entering into the illegal combination and conspiracy aforesaid, have raised the rates of insurance to the persons, firms and corporations desiring insurance in the said district, from fifteen to twenty-five per cent., thereby damaging the people and those engaged in business and desiring to insure their property in said district.

That said Zent, as such joint agent, acting under and in pursuance of the said illegal combination and conspiracy, has for more than a year last past and still does fix and determine all rates of fire insurance effected in said district or territory by the said companies or any of them, and the amount of all premiums to be paid for fire insurance therein to the said companies or any of them and has for the period aforesaid, and still does, make and dictate all special terms and provisions contained in all contracts of fire insurance made by said companies and each of them in said district or territory, and has for the period aforesaid and still does, as such joint agent, carry out and make effective all the terms of said illegal agreement, whereby all the competition between the said companies in the matter of fixing rates to be charged for fire insurance and premiums to be paid for the same in the said district or territory, as well as all competition between the said companies therein in the matter of making special terms of fire insurance, is suppressed and abolished to the wrong and injury of the

The People v. Aachen & Munich Fire Ins. Co.

said people, contrary to public policy and in contravention of the common law of the land.

That the said companies, for the purpose of compelling compliance on the part of each of them with the terms and conditions of the said illegal combination and of more perfectly attaining the ends and objects of the said conspiracy, and of further preventing any competition between them in the matters aforesaid, have agreed with one another that if any of them violate or disregard any of the provisions of the said illegal agreement, each of the said companies so doing shall be subject to a penalty of $1,000, and some means, unknown to the informant, have been provided whereby the payment of any penalty so incurred may be enforced.

That, unless restrained from so doing by the order of this court, the said companies, and each of them and the said Zent, will continue to carry out and put into effect the said illegal agreement in the manner and to the extent hereinbefore set forth.

Defendants in error all join in a general demurrer to the bill. They challenge its sufficiency to warrant the relief prayed, and present four propositions in support of their challenge. Counsel, in their brief, say: "We shall, in this argument, confine ourselves to four of the principal reasons, any one of which we consider decisive."

Their first proposition ("reason") is as follows: "I. It is the province of the legislative department, and not of the judicial, to prescribe the public policy of the State as to various kinds of alleged combinations. The General Assembly has designated at various times (see statutes) what combinations or agreements are expressly prohibited in Illinois, and the courts may not add another class of agreements or any other form of agreement in the same class. This is tantamount to legislation by the courts."

Our statute provides, that "the common law of England * * * and all statutes or acts of the British Parliament made in aid of, and to supply the defects of the common law, prior to the fourth year of James the First

* * * shall be the rule of decision, and shall be considered as of full force until · repealed by legislative authority."

No authority, we think, need be cited in support of the general proposition that combinations and conspiracies in restraint of trade, or to prevent fair competition, are violative of the common law as supplemented by the English statutes in force prior to the fourth year of James the First. This much we understand counsel to concede, but their contention is, that such legislation as is now in force in this State has abrogated the common law rule with respect to combinations and conspiracies in restraint of trade, and that we must now look to this legislation alone to find the public policy of our State with respect thereto.

This proposition has been decided adverse to counsel's contention, by the Supreme Court, in the very recent case of C., W. & V. Coal Co. v. The People, 214 Ill. 421. It is there held, that "the common law as to regulating and fixing prices is in force in Illinois," and that "a combination to prevent competition * * * is a common law conspiracy."

While it is true that this is not the province of the judicial department to prescribe the public policy of the state, it is its duty to scan the law of the state, common as well as statutory, and to find the public policy therein, and to declare it as found. Broadly stated, whatever is violative of the law and injurious to the interest of the public is opposed to public policy, and whatever is violative of the law affecting the public interest is presumed to be injurious to the interest of the public.

Counsel's second reason is: "II. The alleged agreement set forth in the information is not prohibited by the common law. The most that could be claimed by the State is that such agreement is opposed to public policy, and, therefore, unenforcible as between the parties to it. The common law does not prohibit the making of such contracts. It merely declines, after they have been made, to lend its aid to enforce them. If the alleged agreement is

void as between the parties to it, because opposed to public policy, the court will simply leave the parties where it found them."

It appears to us that the case of C., W. & V. Coal Company v. The People, above cited, is conclusive as to this proposition. In that case it is held that a combination to prevent competition "is inimical to trade and commerce, detrimental to the public and unlawful, and amounts to a common law conspiracy, regardless of what may be done in furtherance of the conspiracy."

Counsel's third reason is: "III. Contracts of insurance are not affected with a public interest. Insurance companies are not public utility corporations, and the public, as a matter of right, are not entitled to insurance contracts from these appellees, and the bill does not claim or allege that the public is so entitled. No special franchise from the State is necessary to enable anyone to engage in the insurance business. Any individual may engage in it, and so may any corporation whose charter powers allow it."

In North American Insurance Co. v. Yates, 214 Ill. 272, it is held that " the business of insurance is a public necessity and is stamped with a public interest."

Counsel's fourth reason is: "IV. Equity will only interpose where property rights are injuriously affected. The bill was demurrable in that it did not allege that any party or corporation had been or would be injured by the alleged agreement complained of. No actual injury having been charged, the court properly dismissed the bill."

In C., W. & V. Coal Co. v. The People, *supra*, it is held that " the fact, that a combination to fix the price of a commodity and prevent competition among members of the combination does not give the association a complete monopoly of the trade in the territory in which the members of the association transact business, does not relieve the members from criminal responsibility in forming a combination." And in North American Insurance Co. v. Yates, *supra*, it is held that " a bill by the proper public officer to enjoin the further prosecution of business by  *   *   *

(twenty insurance corporations) alleged to be violating the laws of the State need not show an injury to civil or property rights, since injury to the public will be presumed from the violation of the laws" (affecting the public interest).

We deem it not improper to note that the two cases above cited and quoted from were both handed down by the Supreme Court since the briefs in this case were printed, and this fact sufficiently accounts for the form in which the case is presented to us. These cases so fully cover all the material questions raised that we do not feel called upon to enter into that extended investigation and discussion which we would otherwise deem it our duty to do.

The judgment of the Circuit Court sustaining the demurrer and the decree of that court dismissing the bill are reversed, and the case is remanded with directions to the Circuit Court to overrule the demurrer.

*Reversed and remanded with directions.*