(No. 22783.—

HYMAN WEININGER *et al.* Appellees, *vs.* THE METROPOLITAN FIRE INSURANCE COMPANY *et al.* Appellants.

*Opinion filed February 21, 1935—Rehearing denied April 5, 1935.*

Shaw, J., dissenting.

Samuel Levin, for appellants.

Leonard M. Spira, and Soble, Spira & Langeluttig, (Simon Herr, of counsel,) for appellees.

Mr. Justice Herrick delivered the opinion of the court:

Hyman Weininger, Oscar Weininger and Jacob Weininger, appellees, (hereinafter called the complainants,) doing business as H. Weininger & Sons, a co-partnership, filed their bill in chancery in the superior court of Cook county against the appellants (hereinafter called the defendants) to recover upon nineteen fire insurance policies, aggregating $25,000, issued to the complainants by the sixteen defendants and to apportion the loss among the defendants. The fire causing the loss was discovered in the complainants' place of business about 9:00 P. M. on January 18, 1932. The loss claimed in the bill was less than the total amount of the insurance. The trial court determined the loss at $17,781.50, and entered a decree appor-

tioning that amount amongst the defendants in accordance with their several liabilities under the different policies. An appeal has been prosecuted from that decree direct to this court.

At the threshold of the case we meet two of the errors assigned: (1) That a court of equity has no jurisdiction of the cause and that the complainants have an adequate remedy at law; and (2) that the defendants were deprived of the right of a trial by jury, in violation of section 5 of article 2 of the State constitution. The decision of these two controversial issues is necessary before we may determine whether this court has jurisdiction to review the other questions presented.

Each of the policies on which recovery is sought is known as a standard policy, and each contains a provision for prorating the aggregate loss on the property in the proportion that the insurance written under each policy bears to the total insurance carried. The policies involved contain the same standard provisions and requirements, differing only in details as to premiums payable, issuance and expiration dates, amount of policy, and like particulars.

While some cases akin in principle have been before this court heretofore, the precise question for decision here is one of first impression. The modern and progressive rule has been to relax the former unbending rules of multifariousness, and in order to avoid a multiplicity of suits to permit the inclusion of several causes of action growing out of the same set of facts and the same subject matter, where the same general relief is sought and no undue oppression is worked against the defendants. No inflexible rule can safely be pronounced as to what constitutes multifariousness nor when a court of equity will refuse to take jurisdiction and remit the parties to the law courts. There are so many divergent and conflicting decisions on the subject that an analysis or review of the different adjudications upon the subject would serve no useful purpose but leave

us where we started, confronted with decisions in different jurisdictions of courts of high standing which have arrived at directly opposite results in treating the same subject. Pomeroy's Equity Jurisprudence (4th ed. sec. 245,) states: "It will aid us in reaching the true theory, as well as in determining the extent and limitations of the doctrine, if we can fix at the outset all the possible conditions in which a multiplicity of suits can arise, and can thus furnish a source of or occasion for the equity jurisdiction in their prevention by settling all the controversy and all the rights in one single judicial proceeding. All these possible conditions may be reduced to the four following classes: * * * 3. Where a number of persons have separate and individual claims and rights of action against the same party, A, but all arise from some common cause, are governed by the same legal rule and involve similar facts, and the whole matter might be settled in a single suit brought by all these persons uniting as co-plaintiffs, or one of the persons suing for himself alone. * * * 4. Where the same party, A, has or claims to have some common right against a number of persons, the establishment of which would regularly require a separate action brought by him against each of these persons or brought by each of them against him, and instead thereof he might procure the whole to be determined in one suit brought by himself against all the adverse claimants as co-defendants." This court has heretofore approved Pomeroy's rule 3 above in the following cases: *City of Chicago* v. *Collins,* 175 Ill. 445, *German Alliance Ins. Co.* v. *VanCleave,* 191 id. 410, and *Ashley* v. *Board of Education,* 275 id. 274, and has approved the principle announced in rule 4 in *North American Ins. Co.* v. *Yates,* 214 Ill. 272.

It is one of the favorite objects of a court of equity to do full and complete justice between the parties by avoiding the delays and hardships incident to a multiplicity of suits. (*McGovern* v. *McGovern,* 268 Ill. 135.) In the

case at bar we have the common right in the complainants against the defendants, the establishment of which would regularly require the bringing of at least sixteen separate law actions. No defendant here has a defense which is personal to it, alone, but the defenses are common to all the defendants. If liable, each is liable for the payment of loss under the same conditions as the others. The record contains over 5200 pages. While the cost of litigation is not the only criterion, yet in determining whether the defendants are subjected to any hardship by having the issues here tried in equity, the question of expense to the litigants and the time of the court in settling the issues are factors that may properly be considered by the court. If the issues were submitted to sixteen different juries it is possible that the findings would be varied and conflicting and for different amounts of liability. In fact, it would be possible that in some cases juries might return verdicts for the defendants and in others for the complainants. That there might be very honest differences as to the amount of recovery is demonstrated by the record itself. The master who heard the case found the amount of loss sustained by the complainants at $21,694 while the chancellor fixed the loss at $3812.50 less. Certainly the case would be very much complicated in arriving at the amount of loss which each company should bear by reason of the *pro rata* provision of the policies if the several juries deciding the cases should determine the loss at different amounts. The liabilities of the defendants here by reason of the controverted issues as to the amount of loss and the *pro rata* features of the policies are interrelated and interdependent. There is involved herein, therefore, not only the question of multiplicity of suits, but, if there is a recovery by the complainants, the further fact that when the loss is determined some sort of accounting is necessarily required to fix and prorate the amounts for which the defendants are severally liable. We conclude

that the case here presented is a proper one for the assumption of jurisdiction by a court of equity, not only upon the ground of avoiding a multiplicity of suits but also because an accounting is likewise involved. *Milwaukee Mechanics' Ins. Co. v. Ciaccio*, 38 Fed. (2d) 153; *American Central Ins. Co. v. Harmon Knitting Mills*, 39 id. 21.

Since we have resolved the question of jurisdiction against the defendants, it follows that the constitutional question is decided against them. The right of trial by jury guaranteed by the constitution is only in such actions as were known to the common law. Where equity takes jurisdiction the defendants are not deprived of their constitutional right to a trial by jury. A trial by jury is not a matter of right in an equity proceeding. *Riehl v. Riehl,* 247 Ill. 475; *North American Ins. Co. v. Yates, supra; Turnes v. Brenckle,* 249 Ill. 394; *Keith v. Henkleman,* 173 id. 137; *Barton v. Barbour,* 104 U. S. 126, 26 L. ed. 672.

The complainants, under provisions of the policies, were, on demand of the defendants, examined by them under oath prior to the commencement of the present proceeding. It is now urged that the complainants refused to answer certain alleged material questions propounded to them on such examination. The refusal to answer such questions was on the advice of an adjuster representing the complainants. The complainants apparently were thoroughly examined upon all the material issues. The record of such examination covers approximately 300 pages in the record and was conducted by the defendants' adjusters and an attorney. Refusal to answer the questions did not, under the terms of the policy, work a forfeiture. Such refusal might effect an abatement of the suit as being prematurely brought because of a requirement in the policy that the insured should submit to an examination under oath, and a further provision that no suit or action on the policy should be sustainable "until after full compliance by the insured with all the foregoing requirements." However,

the defendants are not in a position here to raise the issue of the refusal of the complainants to answer any of such questions. No plea in abatement of the writ was filed. The issue cannot be raised by a plea in bar or by answer but must be raised by plea in abatement of the writ. *Weide* v. *Germania Ins. Co.* 1 Dillon, 441; *Humphrey* v. *National Fire Ins. Co.* 231 S. W. (Tex.) 750; *George* v. *Connecticut Fire Ins. Co.* 84 Okla. 172; *Aachen and Munich Fire Ins. Co.* v. *Arabian Toilet Goods Co.* 10 Ala. App. 395, 64 So. 635.

The several policies contained provisions against the keeping, using or allowing on the insureds' premises of gasoline, benzine and like inflammable products, any use or custom of trade or manufacture to the contrary notwithstanding. The proof shows both gasoline and benzine were kept on the premises in small quantities and used in the ordinary and usual conduct of the assureds' business for cleaning furs and merchandise. The fluids were purchased in quantities not exceeding one gallon. The point is made by the defendants that the keeping and use of such inflammables were breaches of the policies and rendered them void. In the use of gasoline the process of cleaning is to put the garment in a drum in which is placed sawdust. Gasoline is poured on the saw-dust. The drum revolves until the garment is cleaned.

Capt. Young, of the fire insurance patrol, testified that he reached the fire two or three minutes after the fire squad and engine from the city fire department had arrived. There was smoke through the store. The firemen were endeavoring to locate the fire. The witness saw Capt. McLaren, of the city fire department, carrying an open lighted flare in the workshop in the rear of the store and there saw him lift the lid of a cleaning vat. The fumes from the cleaning fluid ignited with a slight flash. The fire which did the damage for which recovery is sought was in the vault where the furs were kept under lock at

night. There is not a scintilla of evidence that these small quantities of gasoline and benzine used on the premises were contributing factors either to the cause or extent of the fire. The evidence shows that the use of such volatile fluids was necessary in the conduct of the complainants' business. That such liquids are commonly and generally used for the cleaning of furs is a matter of common knowledge. It is the rule that the policy or contract for insurance is to be construed liberally in favor of the insured and strictly against the insurance company. (*Treolo* v. *Auto Ins. Underwriters,* 348 Ill. 93; *Anderson* v. *Interstate Accident Ass'n,* 354 id. 538; *Budelman* v. *American Ins. Co.* 297 id. 222; *German Ins. Co.* v. *Gibe,* 162 id. 251.) The keeping and using of such volatiles on the premises for necessary use in the complainants' business was such a slight departure from the provisions of the policies that there was no breach thereof. *Fraim* v. *National Fire Ins. Co.* 170 Pa. St. 151, 32 Atl. 613; *Davis* v. *Pioneer Furniture Co.* 102 Wis. 394, 78 N. W. 596; *Arnold* v. *American Ins. Co.* 148 Cal. 660, 84 Pac. 182; *Hanover Fire Ins. Co.* v. *Eisman,* 45 Okla. 639, 146 Pac. 214; *Maril* v. *Connecticut Fire Ins. Co.* 95 Ga. 604, 23 S. E. 463; *Faust* v. *American Fire Ins. Co.* 91 Wis. 158, 64 N. W. 883; *American Central Ins. Co.* v. *Green,* 16 Tex. Civil App. 531; *LaForce* v. *Williams City Fire Ins. Co.* 43 Mo. App. 518; *Mitchel* v. *City of London Assurance Co.* 15 Ont. App. 262; McCornack's Insurance Law of Ill. p. 244.

The defendants urge that there was a failure on the part of the complainants to give immediate notice and satisfactory proof of loss within sixty days from the date of the fire. Each of the policies contained a provision requiring the insured to make a complete inventory of the property damaged and undamaged, setting forth the quantity, cost of each article and amount claimed thereon, and to render a statement to the company within sixty days from the date of the fire, stating the origin of the fire, the

interest of the insured in the property, the cash value of each item thereof, the amount of loss thereon, and other pertinent information concerning the property and the premises. Such statement is required to be signed and sworn to by the insured. Each policy further provided that no loss shall be payable thereunder unless satisfactory proof of loss has been received by the company within sixty days, and that no suit against the company shall be sustained until full compliance by the insured with all of these requirements.

The day after the fire the adjuster for the complainants sent notice of the loss to each of the defendant companies. On January 26 the complainants' adjuster delivered to the adjusters for the defendants an itemized inventory of the property in the store at the time of the fire, setting forth in detail the replacement cost, depreciated inventory value and salvage value of each individual item of merchandise. On February 2 the complainants sent their proofs of loss, properly signed and verified, to each of the several defendants. The proofs of loss were prepared on regular forms provided for that purpose. Instead of listing and describing therein the articles damaged or destroyed by fire in detail the complainants set up a short recapitulation, stating the total value of the merchandise and the total loss, with a notation thereunder, "details delivered to the adjusters." The total loss claimed was $25,071.35. The proofs included a fur coat and some linings claimed to have been destroyed but which later were found. The coat was not damaged but the linings were. The total value of these items was $1042.50. The complainants' attention was not called to this mis-statement in the proofs of loss by any of the defendants or their adjusters or agents. On discovering the error, on March 23 an amendment to the proofs of loss, deducting the value of the fur coat and the difference between the market value and salvage value of the linings, was sent to each of the defend-

ants. The amended proofs reduced the amount claimed to $24,028.85. This amendment was not sworn to, but on April 2 an amendment identical with that of March 23, and duly verified by the complainants, was delivered to each of the several defendants.

The question arises as to whether the proofs of loss delivered to the defendants on February 2 were a sufficient compliance with the condition precedent to recovery stated in the policies. The defendants urge that strict compliance is necessary, while the complainants contend that substantial compliance is sufficient. In the decision of this question it is proper to consider the fact that none of the defendants made any objection to the form or sufficiency of the proofs of loss until after the present proceeding was instituted. By the weight of authority, if the insured attempted to comply with the requirements of the policies as to notice and proof of loss, the receipt and retention of the notice and proof without objection constitute a waiver of the insurers' right later to object thereto as not satisfying the requirements of the policies. (*Continental Life Ins. Co.* v. *Rogers,* 119 Ill. 474; *Phœnix Ins. Co.* v. *Tucker,* 92 id. 64; *German Ins. Co.* v. *Ward,* 90 id. 550; *Pearce Manf. Co.* v. *Lebanon Mutual Ins. Co.* 216 Pa. St. 265; 33 Corpus Juris, 27, sec. 686.) If the proof of loss furnished is not satisfactory the insured is entitled to be advised, and the company is bound to inform him of any want of compliance in the proofs of loss furnished, in order that an opportunity may be given the insured to cure the objection. In the absence of such notice the insurance company cannot avail itself of defects in the notice. *Birmingham Fire Ins. Co.* v. *Pulver,* 126 Ill. 329.

The defendants also contend that there is a variance between the pleadings and proof. The complainants alleged in their bill that they had within the sixty-day period, and on February 2, 1932, rendered a proof of loss to each of the defendants, stating the cash value of each item and

the amount of loss thereon, and that the complainants had kept and performed all things on their part required by the policies. The defendants urge that this is an allegation of performance, whereas the proof shows facts constituting a waiver of performance, and that there can be no recovery because of such variance. The defendants rely on the case of *Fedor* v. *Midland Casualty Co.* 316 Ill. 552, as sustaining their position and overruling the earlier cases in this State on this subject. In the *Fedor case* no written notice of the fire nor proof of loss was given to the insurer. The complainants in that case alleged performance of those conditions and then introduced evidence which tended to show a waiver of the conditions on the part of the defendant. In that situation it is manifest that, since there was no attempt to comply with those requirements of the policy, the insurer could not be estopped from setting up such defense by reason of its failure to insist on a strict compliance with the condition. That case, in our opinion, is not authority for the defendants' contention. In the case at bar the record presents not a waiver of performance of making proof of loss but simply a waiver of the manner and form of proof of loss made. The defendants in receiving the proofs of loss, retaining them and failing to object to their form or sufficiency accepted the proofs as a substantial compliance with the condition and thereby conceded that the complainants had performed this requirement of the policies. Such substantial compliance is sufficient to permit recovery (33 Corpus Juris, 17,) and may be proved under the allegations of the complainants' bill. *Pearce Manf. Co.* v. *Lebanon Mutual Ins. Co. supra; Long Creek Building Ass'n* v. *State Ins. Co.* 29 Ore. 569, 46 Pac. 366.

The defendants claim that they are not liable under the policies by reason of fraud and false swearing on the part of the complainants. They urge fraud in the inclusion of the coat and linings in the proofs of loss of February 2,

which were subsequently withdrawn from the proofs of loss by the amendment of March 23; that the inventory of the complainants as of December 31, 1931, shows three of the items of valuation therein had been raised, and one item of furs originally shown as "Persian" had been crossed out, the word "Russ" written thereover and the price thereon changed from $725 to $1725; also, that the inventory of the complainants for the year ending December 31, 1930, totaled $26,580, while the inventory for the same date in the income tax report submitted to the government for the calendar year 1930 was only $18,875. The defendants claim that the above matters, together with the refusal of H. Weininger, one of the complainants, to answer certain questions propounded to him on his examination, are conclusive evidence of fraud and deceit on the part of the complainants, show an effort to recover through such fraudulent means an amount greatly in excess of the loss sustained, and that thereby they lost their right of recovery against the defendants under such policies. The defendants claim that their adjusters at an early date discovered the coat and linings undamaged in the store. The record shows no evidence whatever that such information was ever communicated to the complainants prior to the filing of their amended proofs. The complainants assert they discovered such merchandise and linings had been included in the original claim through mistake, and that the filing of the amended reduced proofs was an effort on their part to rectify an honest error and was made freely and voluntarily and without any suggestion on the part of the defendants. As to the alleged fraud on the part of the complainants in raising the figures on four items of the inventory of December 31, 1931, and substituting the name "Russ" in lieu of "Persian" on one of these items, a photostatic copy of the inventory in question is shown in the record, and its appearance discloses no indication of any attempted artifice in making the changes. They are clear

and unmistakable and do not require the use of a magnifying lens nor the testimony of an expert to detect. H. Weininger, one of the complainants, by his testimony explained the alterations were made by him shortly after the inventory figures were set up, from his own detection of the errors on the first listing. The evidence in the record shows that the values of the items were fairly comparable to the figures as changed, and that there was, in fact, on hand at the time of the fire a Russian broad-tail coat as listed and not a Persian broad-tail coat. In a stock of goods of the size here involved and more or less disarranged by reason of the fire, we can readily perceive the mistake could have been made without any dishonest motive. There is no sufficient evidence that the complainants willfully swore falsely to the original proofs of loss which included the items of the fur coat and the coat linings.

Answering the discrepancy between the inventory made for the income tax return and the complainants' inventory showing the values on which complainants are predicating their claim for loss, H. Weininger's uncontradicted testimony is that in making the inventory of December 31, 1930, in the income tax return, the inventory value was reduced because market values were then tumbling, and in order to secure complainants against making an income tax return that was not justified under the then prevailing unsettled business conditions, he acted on advice obtained at the office of the income tax collector to the effect that he could make such reduction in values of inventory as he reasonably believed would safeguard the firm against paying taxes on the basis of an inventory that might thereafter be stabilized at a lower figure. This income tax return inventory was for a period of more than a year prior to the fire. It is not an unusual experience in human affairs to find that property for taxation purposes shrinks quite perceptibly in value, and with the uncontradicted testimony of the complainants as to the circumstances under which

the income tax statement was made, we cannot hold that in making the inventory or proof of loss the complainants were guilty of fraud.

The alleged fraud in the refusal of the complainant H. Weininger to answer certain questions on his sworn examination before the insurance companies' adjusters has been heretofore discussed. The unanswered questions were immaterial to the issues involved. It does not appear that the defendants were prejudiced by the complainants' refusal to answer and no fraudulent motive is shown for the refusal.

The testimony of Albert Horwitz, one of the two furvaluation experts called by the defendants on the trial, shows that he definitely sought by examination of the complainants' books and records, by counting skins in certain coats and by checking items in the store, to discover evidence of fraud pertaining to the complainants' claim, but that he found everyone of the articles in the list furnished him by the adjuster with the exception of perhaps one or two skins, and that in addition he found a number of skins that were not listed and were not on the December 31, 1931, inventory.

The presumption very properly is that all men are honest. Where fraud is charged it must affirmatively be proved by clear and convincing testimony. It cannot be established upon mere suspicion. (*McKennan* v. *Mickelberry*, 242 Ill. 117.) False swearing in a proof of loss in order to void the insurance policy must be willful and with intent to deceive and defraud the insurer. *Commercial Ins. Co.* v. *Friedlander*, 156 Ill. 595; *Rockford Ins. Co.* v. *Nelson*, 75 id. 548; *Wittel's Loan Co.* v. *Liberty Fire Ins. Co.* 273 S. W. (Mo.) 192; *Hanscom* v. *Home Ins. Co.* 90 Me. 333, 38 Atl. 324.

The testimony of the complainant H. Weininger given before the master on the subject of values, and also that of his expert witnesses, is attacked as being willfully false,

and it is urged that under the provisions of the policies the policies are voided by such false testimony. Weininger testified to a higher amount of damages before the master than the complainants' other witnesses. The amount, however, was not materially in excess of that of the apparently well-qualified witnesses produced by him on this same subject. On the showing made, Weininger was familiar with furs and garments. He was one of the complainants and naturally interested in the amount of his recovery. By reason of his interest and bias he may have testified to greater values than the other witnesses, but, conceding for the purpose of the point that the valuations placed by him on the garments were exaggerated, it does not follow that his testimony was false within the meaning of the terms of the policy. The subject of damage was at most a matter of opinion. No two witnesses on either side of the case agreed exactly on values. In that situation it is not for us to say that Weininger might not be entirely correct in his testimony as to values. The testimony of the complainants' expert witnesses is also attacked as being fraudulent. The record shows that each was a man of long and full experience in the fur-garment trade and apparently competent to pass upon and express an opinion on the subject of values. We would not be justified in saying that the testimony of the complainants' witnesses was fraudulent because of the fact they placed a valuation on the merchandise destroyed and damaged at a materially higher figure than did the defendants' witnesses. It would be just as logical to say that because of such discrepancy the testimony of the defendants' witnesses was fraudulent. Neither conclusion follows. We do not find the complainants guilty of giving false testimony or making false statements with the intention to deceive or defraud.

Other alleged grounds of fraud are urged by the defendants which it will be unnecessary to detail in this opinion, but all have been considered.

Lastly, it is urged that the complainants did not prove, by a preponderance of the evidence, the amount of loss and damage in accordance with the terms of the policies. The parties do not differ as to the legal rule for the ascertainment of damages in the event of liability. It would appear from the evidence that there is no fixed market price for skins or fur garments. The price is affected by many different factors. The complainants offered the testimony of three experts on fur values and also the testimony of the complainant H. Weininger, who had been in the fur business for about twenty years. The defendant's offered the testimony of two experts. The testimony of the complainants tended to prove a loss of about $23,000, while the testimony of the defendants tended to establish the loss at approximately $13,000. The complainants have sustained a loss. The extent thereof is a controverted question of fact. The amount of the loss as determined by the trial court was well within the range of the evidence. The trial court approved the master's findings except as to the amount of the damages, which the court reduced. We are not able to say the decree is against the weight of the evidence, and in that situation of the record the decree will not be disturbed. *Union Colliery Co.* v. *Fishback,* 299 Ill. 165; *Smith* v. *Thomas Elevator Co.* 278 id. 328; *Klekamp* v. *Klekamp,* 275 id. 98.

The record discloses no prejudicial error against the defendants, and the decree of the superior court is affirmed.

*Decree affirmed.*

Mr. JUSTICE SHAW, dissenting: It is my opinion that this cause should have been dismissed for want of jurisdiction in a court of equity.