Metropolitan Life Insurance Company, Plaintiff, v. Mattie Davis, Appellee, and Virtrue Davis, Appellant.

Opinion filed June 6, 1938.

MANUEL M. WISEMAN, of Alton, and PHILIP G. LISTE-MAN, East St. Louis, for appellant.

JACOBY & DALY, of Alton, for appellee.

MR. PRESIDING JUSTICE STONE delivered the opinion of the court.

This is an appeal from a decree of the circuit court of Madison county, awarding the proceeds of a policy of group life insurance upon the life of Thomas Davis, the husband of appellant, to appellee Mattie Davis, his sister. On June 19, 1934, the plaintiff, Metropolitan Life Insurance Company, issued its group insurance policy to Thomas Davis, who was then an employee of the International Shoe Company, and agreed to pay to the beneficiary designated in the said policy, upon the death of the said Thomas Davis, the sum of $1,000. Appellant was named beneficiary in said policy, and such designation as beneficiary remained until December 11, 1935. On that date the insured took the necessary steps to change the beneficiary to his sister Mattie Davis. On the 13th day of February, 1936, the insured died, and, after his death, claims for the whole amount of the insurance were made upon the plaintiff by both appellee and appellant; plaintiff filed its complaint of interpleader in the circuit court of Madison county, in which complaint both appellee and appellant were made parties defendant. Plaintiff deposited with the clerk of that court the sum of $1,100, which was the amount due under said policy of insurance, and by the decree of the circuit court it was discharged from further liability in the premises.

Appellant filed her answer to the bill of complaint and averred therein that she was the surviving widow

of the insured and that said insured left him surviving three minor children, who were in her custody. She further averred that the purported change of beneficiary in said certificate of insurance was made while the insured was not of sound mind and memory and when his mind and memory were impaired and while he was wrongfully influenced by appellee. She also averred that at the time of the purported change of beneficiary the insured was wholly incapable of making any change of beneficiary or of carrying on any business transactions. With her answer she filed a demand for a jury trial.

Appellee filed her motion to strike from the records of this cause the demand for jury trial filed by appellant, and the court granted said motion and struck the demand for a jury trial from the records of this cause. To this ruling appellant duly excepted.

Appellee then filed her answer to the complaint and denied that the insured was of unsound mind and memory or that his mind and memory was in anywise impaired or that he was wrongfully influenced, or in any manner influenced, by the defendant, Mattie Davis, or anyone else, at the time that the beneficiary on the certificate of insurance involved was changed from the appellant, Virtrue Davis, to appellee, Mattie Davis. She also denied that the insured was incapable of making such change of beneficiary or of carrying on his ordinary business transactions, and averred that at the time such change of beneficiary was made he was of sound mind and memory and acted entirely of his own free will and accord and was free from any influence from anyone other than himself.

The issues were tried by the court without a jury and the court entered a decree in which the sum of $1,100 paid into the registry of the court by the plaintiff, less the plaintiff's costs, was ordered to be paid to the appellee, Mattie Davis, and the appellant, Vir-

true Davis, was ordered to pay the costs of the suit. It is from that decree that this appeal is perfected.

The insured, Thomas Davis, at the time of his death, was about 42 years of age and for some years theretofore was employed at the International Shoe Company in Hartford, Illinois, as a laborer. He had been married twice prior to his marriage to appellant. About six years prior to his death, he married appellant who was then about 20 years of age, and to that marriage four children were born; three during the lifetime of the insured, and one child was born subsequent to his death. He and appellant had lived together continuously since their marriage and for some time prior to his death the insured and his wife and family had made their home with the Neal family in Alton. The original certificate of insurance issued by the plaintiff to the insured, in which appellant was named beneficiary, was in the possession of appellant from the time of its issuance until after the death of the insured.

Appellant assigns as errors that the decree is against the law and the evidence; that the court erred in not finding that the insured was of unsound mind and subject to insane delusions at the time of changing his beneficiary. Claim is also made that the court erred in striking appellant's demand for a jury trial.

Section 63 of ch. 110 [Ill. Rev. Stat. 1937, § 187; Jones Ill. Stats. Ann. 104.063], expressly vests in courts of equity discretion as to whether they shall call a jury on questions of fact in chancery cases. Trial by jury in such cases does not exist as a matter of right, except in certain enumerated cases, notably contests of wills. The policy of vesting such discretion is in our judgment a wise policy. Every contested chancery case contains certain questions of fact, and if the parties of either of them, were entitled to a jury as a matter of right on all contested questions of fact it would render a nullity the very old procedure in chan-

cery cases and thus defeat the express intention of the legislature. The right to a trial by a jury which is guaranteed by the constitution applies only to actions known to common law and is not a matter of right in equity proceedings. (*Weininger v. Metropolitan Fire Ins. Co.,* 359 Ill. 584, 195 N. E. 420.)

It is urged by appellant that the case of *Pyott v. Pyott,* 191 Ill. 280, is contrary to this rule. We do not so interpret that case. While it is true the court does say that in matters of insanity arising in proceedings the better practice is to try that particular question by jury, yet it goes on to say that the discretion to do so is in the trial court and that the verdict in any event is only advisory and that it is no error to hear such matters before the court.

The trial court did not abuse its discretion in striking the demand for jury and refusing to submit the issue of insanity to a jury.

Appellant urges that the insured was under the influence of an insane delusion which caused him to make the change in his beneficiary. In *Snell v. Weldon,* 243 Ill. 496, the court said, "If without evidence of any kind, a testator imagines or conceives something to exist which does not exist in fact and which no rational person would in the absence of evidence believe to exist, he is afflicted with an insane delusion. A person who believes supposed facts which have no existence except in his perverted imagination and which are against all evidence and probability, and conducts himself, however logically, upon the assumption of their existence, is under an insane delusion." In *Nicewander v. Nicewander,* 151 Ill. 156, the court said, "Insane delusion consists in the belief of facts which no rational person would have believed. In order that the testator may comprehend the relations which he holds to those having claims upon him, no insane delusion should influence his will; no disorder of the mind should poison his affections, pervert his sense of right or prevent the

exercise of his natural faculties. Unreasonable prejudice against relatives is not ordinarily a ground for invalidating a will; but a will may be set aside where the testator's aversion is the result of an insane delusion, and his conduct cannot be explained on any other ground.'' In *Snell v. Weldon, supra,* the court further said, ''A belief which results from a process of reasoning from evidence, however imperfect the process may be or illogical the conclusion, is not an insane delusion. . . . Where a testator has some actual grounds for the belief which he has, though regarded by others as wholly insufficient, the mere misapprehension of the facts or unreasonable and extravagant conclusions drawn therefrom do not establish the existence of such a delusion as will invalidate his will.''

In *Owen v. Crumbaugh,* 228 Ill. 380, our Supreme Court defined an insane delusion as ''a spontaneous conception and acceptance as a fact of that which has no real existence except in imagination, and persistent adherence to it against all evidence.'' Likewise throughout the books there is little or no distinction in the definitions which our Supreme Court has adhered to in defining insane delusions. Without exception, however, they hold that that in the mind of a person which amounts to an insane delusion is a belief in something which did not or could not exist or in all human probability would not exist, and a condition of mind which has no evidence to support it and will not yield to reason. If, as said in *Snell v. Weldon, supra,* there is evidence or grounds to induce such a belief, then however wrong the judgment of the person may be, that judgment cannot and does not come within the definitions of an insane delusion.

Applying these principles to the case at bar, was there any evidence to induce in the mind of the insured the thought that his wife was not faithful to him? The evidence shows that at the time the last child of insured and appellant was conceived the genital organs of in-

sured, her husband, were so swollen as the result of heart disease that sexual intercourse was impossible, and the man stated that he had not had connection with her since the prior April. This is not only evidence to induce a belief, but if those statements are true it is conclusive that the wife was unfaithful to him.

Similarly, with reference to the oft repeated statements of insured that his wife was poisoning him or attempting to poison him to get his insurance, the evidence shows (supplemental abstract 18), that whenever his wife cooked for him she would never eat anything she cooked for him; if she cooked it in a frying pan, they would never eat out of that frying pan; if they cooked a whole chicken, never eat any of that chicken; if he did not eat they would throw it out.

At this time the man was going from bad to worse with reference to his physical condition. He had in mind, probably, the evidence of the unfaithfulness of his wife; he probably believed that his wife was poisoning him for the purpose of getting his insurance. Was that belief merely a product of his imagination, or was it based on some evidence? Some of the evidence is just recited above, together with the circumstances. It might not be proof to justify his belief, but it cannot be said, in view of those facts and circumstances, that he acted without any evidence in forming the belief which he apparently did form. In the cases above cited and many more, the principle runs that if the condition of the mind is based upon evidence, however slight, which might induce a belief in a reasonable mind, such a belief does not amount to an insane delusion. We cannot say that the chancellor was wrong in concluding that the apparent beliefs held by the insured did not amount to an insane delusion.

The evidence in the case offered as showing that the insured was overcome and that he was acting under undue influence at the time of changing his beneficiary

is not sufficient, standing alone, uncontradicted, upon which to base a conclusion that the insured was unduly influenced. We shall not consume space in discussing that issue; the trial court ruled correctly on that issue of the case.

This leaves only the contention that the finding and judgment of the trial court were against the manifest weight of the evidence.

Much of the evidence offered had to do with the deceased's physical condition, or related to incidents such as the deceased's saying that his wife was trying to poison him, that his swollen body was the result of poisoning. One witness came to his house to take him to work one time and insured told him to wait until he got dressed; insured was already dressed. This witness took this incident as a foundation for the opinion that there was something wrong. One other witness, George Parker, testified that he did not believe insured knew what he was talking about; one other witness came to his house and saw a pistol on his table at breakfast. Other witnesses, notably Mr. and Mrs. Neal with whom insured with his wife lived for a time, testified he walked the floor at night and complained of agony.

Doctor Cousatz testified that insured talked rationally, another physician, Doctor Samuels, said that the insured seemed rational and that his mental condition was all right. Many lay witnesses were called who in varying language expressed opinion that insured "was close to his right mind," that he "talked as good sense as he always talked"; that he "conversed in a rational manner," or "had good judgment"; that he "talked as a man very sensible"; that he "without doubt knew what he was doing"; that he talked with "good common judgment."

We are to add to this testimony the presumption of sanity which obtains; also the circumstance that insured attended to such business as he had to attend to

up to the time he became very ill; that he personally and alone went through the necessary formalities of having the beneficiary changed in his policy.

If for the moment we leave out the circumstances of the insured transacting his business, and take the evidence of this record alone, reasonable men might disagree as to the mental condition of the insured at the time of change of beneficiary. Such being the case we are unable to say that the finding and judgment of the court was against the manifest weight of the evidence. Adding to the evidence the circumstances referred to it seems to us that a jury might well conclude that insured was capable of knowingly and understandingly doing the act which he did when he changed his beneficiary. The chancellor in this case without a jury saw and heard the witnesses who testified, obviously applied the tests of credibility to the witnesses who did testify and found that the act of changing the beneficiary was the act and deed of insured. We are of the opinion that the trial court did not err in making such finding and entering such judgment.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*