Village of Melrose Park et al., Appellees, v. Prairie State Bank et al., Appellants. Appeal of Prairie State Bank.

Gen. No. 43,374.

Opinion filed November 20, 1946.   Released for publication
December 5, 1946.

THOMAS J. CARROLL, of Chicago, for appellant.

GUY C. GUERINE, of Melrose Park, for appellees;
GUY C. GUERINE, of Melrose Park and PAUL E. PRICE,
of Chicago, of counsel.

MR. PRESIDING JUSTICE LEWE delivered the opinion
of the court.

By this appeal defendant seeks to reverse a decree
finding that certain judgments on confession and judg-
ment notes were paid and directing that the notes be
canceled by defendant bank and delivered to the plain-
tiffs.

In 1937 the Village of Melrose Park, a municipal cor-
poration, hereinafter called the "Village," had many
creditors, including its employees who also appear as
plaintiffs in the instant proceedings and are hereafter
called "Employees." Defendant Prairie State Bank,
a banking corporation of Illinois, hereafter called the

"Bank," was the official depositary of the Village funds. By prearrangement between the Village and the Bank, the Employees borrowed certain sums of money from the Bank, payment of which was secured by wage assignments and judgment notes executed by the employees. All of the wage assignments were for wages earned and past due. Subsequent to the making of the wage assignments to the Bank, the Village refused to pay the Employees and discharged many of them. Afterwards the Employees and the Bank instituted suit against the Village to recover the money due under the wage assignments, in circuit court of Cook county case No. 37 C 11258, entitled *A. H. Leeseberg v. Village of Melrose Park, a municipal corporation.*

On December 3, 1940 judgment was entered against the Village in favor of the Bank in the sum of $19,883.84. When the judgment was entered against the Village all of its outstanding obligations aggregated about $80,000. At that time its general corporate fund was very low and its statutory bonding power was fixed at approximately $60,000. It was therefore proposed by the Village officials that all of the creditors reduce their claims and accept bonds in full payment thereof. After a period of negotiation the Bank agreed to accept from the Village the sum of $16,883.84 in full payment of its judgment for $19,883.84 and to execute a satisfaction of judgment for this amount. There was also due to the Employees of the Village, in addition to the sum represented by judgment notes executed by the Employees to the Bank, approximately $20,000. It appears that all of the creditors of the Village voluntarily scaled down their respective claims. The Bank waived about 14 per cent of its claim based on loans made to the Employees and the Employees waived about 20 per cent of their claims not covered by wage assignments.

After receiving a check for $16,883.84, the Bank, in accordance with its agreement, filed a formal satisfaction of judgment in the *Leeseberg* case in the circuit court, case No. 37 C 11258. Several months later it filed 21 separate suits in the municipal court of Chicago on judgment notes given to it by the Employees to secure payment of their loans. When the Employees learned that judgments by confession had been entered against them in the municipal court of Chicago, they filed the bill in the instant case to restrain the Bank from proceeding on the judgment notes and to restrain the bailiff of the municipal court and the sheriff of Cook county from levying executions. The bill of complaint as amended alleges in substance that the judgment obtained by the Bank in the *Leeseberg* case, 37 C 11258, included the principal and interest due to the Bank from the Employees on their wage assignments or judgment notes; that the Bank agreed that upon the payment of the judgment it would cancel and deliver to the Village all of the judgment notes executed by the Employees; that the Bank received payment in full of its judgment against the Village but refused to cancel and deliver the judgment notes; that judgment was entered by confession on 21 of the notes in question in the municipal court of Chicago, and that 16 other Employees (plaintiffs herein) are threatened with suits. The bill concludes with a prayer for an order restraining the Bank from enforcing the judgments based on the notes executed by the Employees, and also restraining the bailiff of the municipal court of Chicago and the sheriff of Cook county from levying executions; that the court declare the judgments by confession null and void; and that the remainder of the notes be canceled and delivered to plaintiffs.

In its answer the Bank avers that the action against the Village in the *Leeseberg* case, 37 C 11258, was

based only on the wage assignments of the Employees, and not on the judgment notes; that the indebtedness of the Employees to the Bank was not adjudicated in the *Leeseberg* case; that the matters pleaded in the instant case could have been raised as a defense in the municipal court of Chicago; and that the complaint stated no grounds for the intervention of a court of equity.

The chancellor found among other things that the judgment notes executed by the Employees in favor of the Bank were fully discharged by the satisfaction of judgment filed by the Bank in the *Leeseberg* case; that all the judgment notes are void and should be canceled; and that the plaintiffs have established the material allegations of their complaint.

The defendant Bank maintains that the evidence does not warrant the findings of the chancellor.

The evidence shows that after obtaining judgment in the *Leeseberg* case the Bank passed a resolution authorizing its officials to accept in full settlement of its judgment against the Village $16,883.84 in cash, in corporate bonds, or in "judgment tort bonds." Afterwards, on December 3, 1941, Guy C. Guerine, attorney for the Village, sent a messenger, one Fanelli, to the Bank with a check for the amount agreed upon and a letter, the pertinent parts of which read as follows: "In checking the transcript I find that the assignments and notes are not filed in court, although they are marked as exhibits. I will require that both the assignments and notes will be filed in the circuit court of Cook county in the above cause. I will also require a satisfaction of judgment signed by the Bank."

When Fanelli presented the check and letter to Tomaso, vice president of the Bank, he told Fanelli that the assignments and judgment notes were being photostated and "when I get them I will return them to Mr. Brust." Paul W. Brust it appears was the attorney for the Employees. Brust and other witnesses

testifying in behalf of the plaintiffs stated that the Bank promised to cancel and surrender the notes in question upon receipt of the check from the Village.

The law is well established that a chancellor's finding of facts on conflicting evidence will not be disturbed unless the decree is clearly against the manifest weight of the evidence. (*Lolli v. Rondon,* 389 Ill. 94; *Hall v. Pittenger,* 365 Ill. 135.)

We think the evidence supports the conclusion that the Bank did agree to cancel and surrender the notes simultaneously with the delivery to it of the check by the Village attorney, Guerine, and that the chancellor was justified in so finding.

Defendant next urges that the plaintiffs had a complete and adequate remedy at law.

It should be noted that when the present action was instituted 21 separate suits had been filed by the Bank in the municipal court of Chicago, predicated on the judgment notes signed by the plaintiffs (Employees) and that further action was threatened on the remaining 16 notes. So far as the record shows, actions which had been commenced and those threatened by the Bank were all founded on like facts, and depended on the same questions of law. It therefore follows that the decision in one case would be determinative of all. Under these circumstances we think that a court of equity had a right to intervene for the purpose of disposing of the whole controversy in a single judicial proceeding. In *Weininger v. Metropolitan Fire Ins. Co.,* 359 Ill. 584, 587, the court said:

"The modern and progressive rule has been to relax the former unbending rules of multifariousness, and in order to avoid a multiplicity of suits to permit the inclusion of several causes of action growing out of the same set of facts and the same subject matter, where the same general relief is sought and no undue oppression is worked against the defendants. No inflexible rule can safely be pronounced as to what

constitutes multifariousness nor when a court of equity will refuse to take jurisdiction and remit the parties to the law courts.''

And again at page 588:

''It is one of the favorite objects of a court of equity to do full and complete justice between the parties by avoiding the delays and hardships incident to a multiplicity of suits.''

It appears that some of the plaintiffs filed a petition in the municipal court to consolidate the cases on which judgments were entered and for leave to plead and defend, and that the municipal court refused to entertain the petition on the ground that the defenses and issues raised ''can all be adjudicated'' in the case at bar. The question of plaintiffs' right to vacate the judgments of the municipal court and the validity of their common defense was not determined in that proceeding. Manifestly, those plaintiffs whose judgment notes were still being held by the Bank and upon which no legal action has been taken could not present their defense in the municipal court since they were not parties. They would be compelled to defend in separate actions whenever the Bank saw fit to bring suit against them. In the present case the rights of all the parties are protected.

In the view which we take of this case it is not necessary to consider the other points raised.

For the reasons indicated, the decree is affirmed.

*Decree affirmed.*

KILEY and BURKE, JJ., concur.